SECOND DIVISION
 NOVEMBER 26, 1996 
 

1-95-0670
1-95-0730

SHARE HEALTH PLAN OF ILLINOIS, INC., ) Appeal from the
 ) Circuit Court of
 Plaintiff-Appellee and ) Cook County.
 Cross-Appellant, )
 )
 v. ) 
 ) 
 ) 
RUTH ALDERSON, ) 
 ) 
 Defendant-Appellant and ) The Honorable
 Cross-Appellee. ) Albert Green,
 ) Judge Presiding.

 JUSTICE DiVITO delivered the opinion of the court:
 Share Health Plan of Illinois (Share) brought this action for
reimbursement of medical expenses that it paid on behalf of Ruth
Alderson after she was injured by third parties. Alderson received
from the third-party tortfeasors a general, nonitemized settlement
payment, from which Share requested reimbursement of paid medical
expenses. The circuit court granted Share's motion for summary
judgment. On Alderson's motion for reconsideration, the court
reduced the judgment award by a pro rata amount of attorney fees
paid by Alderson in pursuance of her tort settlement. Alderson
appeals the order of summary judgment, and Share appeals the order
reducing the judgment. For the following reasons, we affirm both
the grant of summary judgment and the order reducing the judgment. 
 
 Share is a health maintenance organization (HMO) that
contracts with the United States Health Care Financing Administra-
tion (HCFA) to provide and administer Medicare benefits through its
SeniorCare program. In 1985, Share accepted Alderson's application
for membership in the SeniorCare plan and issued her a subscription
certificate and a member handbook.
 On July 7, 1988, Alderson suffered severe injuries when a
2,000-pound compressor detached from a truck and pinned her against
a wall. She incurred expenses of $68,835.85 for "medical spe-
cials." Share paid $21,317.35 of those medical specials, $14,110
of which was in satisfaction of a $42,220.25 bill owed to North-
western Memorial Hospital. That hospital accepted Share's partial
payment in full satisfaction of Alderson's bill in compliance with
federal Medicare regulations that limit charges to Medicare or HMOs
providing Medicare benefits.
 Alderson filed a personal injury lawsuit against the third-
party tortfeasors alleging that she sustained permanent injuries
causing considerable pain and suffering, in the past and to be
expected in the future, and permanent disability. She also alleged
the loss of earnings and wages and the payment of medical,
surgical, and hospital expenses. In that action, Alderson filed a
pretrial memorandum itemizing $68,835.85 of "medical specials" that
she incurred. In November 1990, Alderson settled the lawsuit and
received a general, nonitemized payment of $700,000.
 Share subsequently sought reimbursement from Alderson for the
medical expenses it had paid. The parties entered into negotia-
tions. On November 14, 1990, Share sent Alderson a letter agreeing
to accept $20,727.10 in settlement of its claim. In response,
Alderson's attorney wrote that payment would be withheld until
Share provided cancelled checks of its payments to medical
providers. Share forwarded copies of the cancelled checks to
Alderson, but received no payment. 
 On November 26, 1990, Alderson and her attorney filed a
"settlement breakdown sheet" in the personal injury action. The
sheet listed a lien to "Share HRI" for $20,727.10.
 On September 12, 1991, Share filed this action, requesting
$49,143.35 for the "reasonable value" of the medical expenses it
paid. On October 22, 1991, Alderson filed its class action
alleging that Share engaged in the improper practice of seeking
reimbursement of medical expenses (1) in excess of the amounts
actually paid to providers and (2) from nonitemized settlements
received by its members from third-party tortfeasors. In December
1992, Share filed an amended complaint lowering its request to
$20,727.10.
 On October 19, 1994, the circuit court granted Share's motion
for summary judgment and awarded it $20,727.10. On January 18,
1995, the court granted Alderson's motion for reconsideration and
reduced the judgment to $13,824.98 to reflect Share's pro rata
portion of attorney fees incurred by Alderson to obtain the
$700,000 settlement. 
 Share contends that it is entitled to summary judgment because
it has a right to reimbursement as a secondary Medicare payer.
Alderson responds that Medicare regulations required Share to prove
that medical expenses were contained in the settlement she
received. 
 Orders of summary judgment are reviewed de novo to determine
whether any genuine issues of material fact exist and whether the
movant is entitled to judgment as a matter of law. Outboard Marine
Corp. v. Liberty Mutual Insurance Co., 154 Ill. 2d 90, 102, 607
N.E.2d 1204 (1992).
 Under the Medicare Secondary Payer provisions of the Social
Security Act (42 U.S.C. 1395 et seq. (1994)), a Medicare provider
is required to serve as a secondary payer when a Medicare benefi-
ciary can expect payment under another insurance plan. 42 U.S.C.
1395y(b)(2) (1994). As a secondary Medicare payer, any payments
that it makes on behalf of the beneficiary are conditioned on
reimbursement. 42 U.S.C. 1395y(b)(2)(B)(i) (1994). A conditional
payment, which may be made where Medicare benefits are claimed for
the treatment of injury caused by a third party, has been inter-
preted by the Secretary of Health and Human Services (the Secre-
tary) in the Code of Federal Regulations (the Code) to be one for
services for which another payer is responsible. 42 C.F.R. 411.52
(1996); 42 C.F.R. 411.21 (1996).
 The general provisions of the current Code provide that where
a conditional payment is made and the beneficiary recovers from the
primary payer, the HCFA may recover the "lesser of the *** amount
of the Medicare primary payment *** [or] the amount of the third
party payment." 42 C.F.R. 411.24(c) (1996). The predecessor of
the current provision, which similarly provided that the HCFA "may
recover an amount equal to the Medicare payment or the amount
payable to the third-party, whichever is less," was interpreted to
allow full recovery of conditional Medicare payments, "even when
the beneficiary's settlement is for less than her total damages." 
Zinman v. Shalala, 67 F.3d 841, 843 (9th Cir. 1995). In Zinman,
the court rejected the argument that Medicare's right to recover
was limited to the extent that a beneficiary's settlement actually
covered the services for which Medicare paid. Zinman, 67 F.3d at
844.
 Further, the Medicare Carriers Manual (the Manual) provides
that the entire amount of a settlement is subject to recovery by
Medicare, "regardless of how amounts may be designated." United
States Department of Health and Human Services, Health Care
Financing Administration, Medicare, Part B, Carriers Manual 3340.6
(April 1988). The provisions of the Manual are considered to be
"valid interpretative rules, appropriately promulgated by the
Secretary under the authority of 42 U.S.C. 1395 x(s)(7)." Keefe
v. Shalala, 71 F.3d 1060, 1065 (2d Cir. 1995). As "an agency's
construction of its own regulations," the provisions of the Manual
are accorded "substantial deference." Keefe, 71 F.3d at 1065,
quoting Lyng v. Payne, 476 U.S. 926, 939, 90 L. Ed. 2d 921, 934,
106 S. Ct. 2333, 2341 (1986).
 Thus, read together, the Medicare Secondary Payer statute, the
Manual, and Keefe dictate that the HCFA can recover the entire
amount of, but not more than, a third-party payment or settlement,
regardless of whether and how amounts are designated. In other
words, if Medicare were to pay $75,000 in benefits and the benefi-
ciary were to receive a nonitemized settlement of $50,000, Medicare
would be entitled to recover the total amount of the settlement.
 This conclusion is in accord with the Medicare and Medicaid
Guide published by Commerce Clearing House. That document
provides:
 "In general, Medicare policy requires recover-
 ing payments from liability awards or settle-
 ments, where the settlement arises from a
 personal injury action or a survivor action,
 without regard to how the settlement agreement
 stipulates disbursement should be made. That
 includes situations in which the settlements
 do not expressly include damages for medical
 expenses. Since liability payments are usual-
 ly based on the injured or deceased person's
 medical expenses, liability payments are
 considered to have been made 'with respect to'
 medical services related to the injury even
 when the settlement does not expressly include
 an amount for medical expenses." Commerce
 Clearing House, Medicare and Medicaid Guide,
 par. 4142, at 1372 (1995).
 The foregoing applies to recovery by HCFA and does not
directly resolve the issue presented here. In this case, Share
relies for recovery on a different section of the Code, one that
specifically relates to HMOs. That section provides in relevant
part: 
 "If a Medicare enrollee receives from an
 HMO or CMP covered services that are also
 covered under *** any liability insurance
 policy or plan, *** the HMO or CMP may charge
 *** 
 ***
 (2) The Medicare enrollee, to the extent
 that he or she has been paid by the carrier,
 employer, or other entity." 42 C.F.R.
 417.528(b)(2) (1995).
 In light of our conclusion that Medicare may recover the
entire amount of a settlement, regardless of how damages are
apportioned, we reject Alderson's contention that "to the extent
that he or she has been paid" means that Share can recover only
that portion of the settlement which was specifically designated to
it. Rather, we read the "to the extent" phrase quoted above to
mean that Share, which was acting under contract to the HCFA, may
recover up to the amount of settlement, but not more. We decline
to hold otherwise because doing so would be inconsistent with the
overall scheme of the Medicare Secondary Payer statute. 
 Alderson contends that even if Share has the right to
recover payment under Medicare regulations, that right is limited
because Share provides HMO coverage that pays benefits in excess of
Medicare coverage. Based upon an advertisement, she asserts that
there is a genuine issue of material fact as to whether Share is
seeking reimbursement for expenses paid in excess of Medicare
coverage. Because we find no indication in the record that the
payments here in fact exceeded Medicare coverage, we reject her
contention. 
 Accordingly, we conclude that Share is entitled to reim-
bursement for payments it made in satisfaction of Alderson's
medical bills, without having to prove that the medical expenses
were indeed covered by the third-party tortfeasors. Because we
conclude that Share has a right to reimbursement as a secondary
payer of Medicare benefits, we need not address its other grounds
for summary judgment.
 We turn to the question of whether Share is entitled to the
full $20,727.10 that it demanded. Share contends that the circuit
court erred in reducing the judgment to reflect its pro rata
portion of Alderson's attorney fees in the tort action. Alderson
replies that Share is accountable for attorney fees under the
common fund doctrine.
 Under Medicare regulations, the general rule for recovery of
Medicare payments from a beneficiary is that Medicare reduces its
recovery to take account of the beneficiary's cost of procuring the
settlement. 42 C.F.R. 411.37(a)(1) (1995). There is a "special
rule," however, that provides that "[i]f HCFA must bring suit
against the party that received payment because that party opposes
HCFA's recovery, the recovery amount is the lower of" the Medicare
payment or the total settlement minus the party's total costs. 42
C.F.R. 411.37(e) (1995).
 Here, Share contends that the special rule applies because
Alderson opposed Share's recovery and Share was required to file
suit to recover its payments. Share, however, cites no authority
for the proposition that the special rule applies to a Medicare
payer other than HCFA. Because the Medicare Secondary Payer
statute grants HCFA procedural recovery rights not provided to all
Medicare payers (see, e.g., 42 U.S.C. 1395(b)(2)(B)(iii) (1994)
(providing subrogation rights for the United States)), absent a
provision expressly applying to HMOs, we decline to depart from the
explicit terms of the statute. The special rule is unavailable to
Share.
 As for whether Share is liable under the common fund doctrine,
in Illinois, the doctrine permits a party to be reimbursed for
attorney fees incurred in creating a common fund for the benefit of
persons other than the attorney or his or her client. Scholtens v.
Schneider, 173 Ill. 2d 375, 385 (1996). That equitable doctrine
requires that the beneficiary pay its fair share of the costs of
litigation. Wolf v. Ampacet Corp., No. 1-95-4342, slip op. at 6
(November 1, 1996). The underlying rationale is that unless the
costs of litigation are proportionally spread to the beneficiary,
it will be unjustly enriched. Scholtens, 173 Ill. 2d at 385. 
Here, Alderson incurred attorney fees to obtain the settlement from
which Share now benefits. Accordingly, the circuit court properly
reduced the judgment to $13,824.98 to reflect Share's pro rata
portion of attorney fees incurred by Alderson to obtain the
$700,000 settlement. 
 The grant of summary judgment and the order reducing Share's
award are affirmed. 
 Affirmed.
 HARTMAN, P.J., and SCARIANO, J., concur.