John D. ALLEMAN, individually, and as "Class Representative,"
Plaintiff,

v.

BLUECROSS BLUESHIELD OF ILLINOIS, as Administrator of the Associates' Health and Welfare Plan for Wal–Mart and Sam's associates/partners, Defendant.

No. 2002–CV–4107–JPG.

United States District Court, S.D. Illinois.

Oct. 3, 2002.

John D. Alleman, Alleman & Hicks, Carbondale, IL, for Plaintiff.

John M. Russell, Lawrence & Russell, LLP, Memphis, TN, for Defendant.

### ORDER

GILBERT, District Judge.

This matter comes before the Court on the plaintiff's motion to remand. (Doc. 11). The defendant has responded. (Doc. 13). For the reasons discussed below, the Court will grant the motion to remand.

### BACKGROUND

The plaintiff, John Alleman, is an attorney. At all times relevant to this action, Donna Newcomb (who is not a party) was an employee at Wal–Mart and had health insurance through the "Associates Health and Welfare Plan," an ERISA plan (hereinafter "the Plan"). The plaintiff alleges that the defendant, Blue Cross / Blue Shield of Illinois, is the plan administrator.[1]

Newcomb was involved in an automobile accident, sustained injuries and incurred medical bills, of which $5,513.60 were paid by the Plan. She hired Alleman to represent her interests in a personal injury suit against the other driver. Alleman worked for a 1/3 contingent fee and settled Newcomb's claim for $100,000.00. Alleman created a common fund, out of which he paid $5,513.60 to Blue Cross / Blue Shield as was required by the Plan's reimbursement provision.

The reimbursement provision of the Plan further provided that there would be no reduction of the Plan's lien for attorney's fees. Nevertheless, Alleman sought attorney's fees, under the Illinois Common Fund Doctrine, from Blue Cross / Blue Shield for 1/3 of the amount remitted. Blue Cross / Blue Shield refused, and Alleman filed suit against Blue Cross / Blue Shield in Jackson County, Illinois on behalf of himself and an alleged class of similarly situated attorneys. His Complaint asserts a claim under the Common Fund Doctrine.

The defendant removed the case to this Court under 28 U.S.C. § 1441 on the basis of diversity and federal question jurisdiction. The plaintiff's motion to remand followed.

### DISCUSSION

A defendant may remove to federal court a case filed in state court if there is

---

**1.** There is some dispute about whether Blue Cross / Blue Shield is the plan administrator. The defendant contends that Blue Cross / Blue Shield is a *claims* administrator and that the Administrative Committee of the Wal– Mart Stores, Inc. Associates' Health and Welfare Plan is the *plan* administrator. This dispute need not be resolved in order to dispose of the instant motion.

federal subject matter jurisdiction over the case. 28 U.S.C. § 1441(a). Federal courts are courts of limited subject matter jurisdiction. *Flight Attendants Against UAL Offset v. C.I.R.*, 165 F.3d 572, 578 (7th Cir.1999) (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994)). In its § 1441 notice of removal the defendant asserts two bases for federal subject matter jurisdiction: diversity jurisdiction, 28 U.S.C. § 1332, and federal question jurisdiction, 28 U.S.C. § 1331. (Doc. 1).

■ Section 1332(a) confers upon federal courts subject matter jurisdiction over civil actions where the amount in controversy exceeds $75,000.00 and there is complete diversity of citizenship. The defendant now concedes that the jurisdictional amount is not satisfied in this case. The individual plaintiff's claim is well below $75,000.00. Under *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), multiple plaintiffs with separate claims must each meet the jurisdictional amount requirement. Therefore, even though the plaintiff purportedly brings this suit on behalf of a class, the jurisdictional amount is not satisfied by the class's aggregate claim—even assuming that such a claim is greater than $75,000.00.

Section 1331 confers upon federal courts subject matter jurisdiction over civil actions "arising under" the laws of the United States. As a general rule, whether a case arises under federal law is determined by what appears in the plaintiff's well pleaded complaint as "[i]t is long settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (citing *Gully v. First National Bank*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936)). "Thus the defendant

cannot cause a transfer to federal court simply by asserting a federal question in his responsive pleading." *Rice v. Panchal*, 65 F.3d 637, 639 (7th Cir.1995). This is the so-called "well-pleaded complaint rule." In this case, the face of the plaintiff's complaint does not raise any federal issues.

There is, however, an exception to the to the well-pleaded complaint rule—the "complete preemption doctrine." This jurisdictional doctrine provides that "to the extent that Congress has displaced a plaintiff's state law claim, that intent informs the well-pleaded complaint rule, and a plaintiff's attempt to utilize the displaced state law is properly 'recharacterized' as a complaint arising under federal law." *Rice*, 65 F.3d at 640 n. 2 (citing *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)).

■ The jurisdictional doctrine of complete preemption is often confused with "conflict preemption." Conflict preemption exists when a federal law provides a defense to a state law claim. *Rice*, 65 F.3d at 639. Federal defenses can be raised in state court, and they do not create federal jurisdiction. *Id.* at 639–40. On the other hand, "federal subject matter jurisdiction exists if the complaint concerns an area of law 'completely preempted' by federal law, even if the complaint does not mention a federal basis of jurisdiction." *Jass v. Prudential Health Care Plan*, 88 F.3d 1482, 1487 (7th Cir.1996) (citing *Rice*, 65 F.3d at 642).

"In [*Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) ], the Supreme Court extended the 'complete preemption' exception to the well-pleaded complaint rule to ERISA cases." *Jass*, 88 F.3d at 1487. Subsequently, the Seventh Circuit has held that cases within the scope of ERISA § 502(a) are *completely* preempted while § 514(a)

provides the basis for *conflict* preemption. *Rice,* 65 F.3d at 639–40. In this case, the Court must decide whether the plaintiff's common fund doctrine claim is within the scope of Section 502(a).[2]

The Illinois Common Fund Doctrine "permits a party who creates, preserves, or increases the value of a fund in which others have ownership interest to be reimbursed from that fund for litigation expenses incurred, including counsel fees." *Scholtens v. Schneider,* 173 Ill.2d 375, 219 Ill.Dec. 490, 671 N.E.2d 657, 662 (1996). The plaintiff argues that ERISA does not "completely preempt" claims brought under the common fund doctrine. More specifically, the plaintiff argues that the claim does not arise under § 502, but rather, that it arises under a wholly separate state law theory, and that, therefore, the complete preemption doctrine is inapposite. This position is supported by *Blackburn v. Sundstrand Corporation,* 115 F.3d 493 (7th Cir.1997), which presented facts similar to this case.

In *Blackburn,* two beneficiaries of an ERISA plan, Ronald and Barbara Blackburn, were injured in an automobile accident. *Blackburn,* 115 F.3d at 494. The plan paid $25,831.00 toward the cost of the Blackburns' medical care. *Id.* Then, the Blackburns filed suit in an Illinois court against the driver of the other car and accepted a settlement of $105,000.00. *Id.* Two parties had claims against the settlement fund—the Blackburns' attorney and their ERISA benefit plan. *Id.* The Blackburns filed a petition in state court to

apportion the fund. *Id.* The fund administrator removed the case to federal court under § 1441. *Id.* The district court held that the Illinois common fund doctrine was "preempted" by ERISA § 514(a), and directed that the full $25,831.00 be paid from the fund to the plan. *Id.* Apparently, there was no motion to remand as the district court never discussed the basis for its jurisdiction. *Id.*

The Seventh Circuit vacated the judgment of the district court, holding that the district court lacked subject matter jurisdiction. The Court stated:

> Not even the most expansive reading of ERISA covers motor vehicle collisions, just because part of the recovery may inure to the benefit of a plan. The petition to apportion the fund invoked the ancillary jurisdiction of the state court and was part of that original, nonremovable action.

*Id.* In this case, the defendant focuses on the language above in arguing that this case is a significantly different type of action. The defendant notes that while *Blackburn* involved a petition to apportion which was ancillary to the underlying tort case, this case is an independent civil action. The Court, however, does not find that distinction to be significant. In drawing that conclusion, the Court relies, in part, upon the following language in *Blackburn:*

> Even if we were to treat the petition as inaugurating a separate "civil action," removal would have been improper.

---

**2.** Section 502(a) provides, in part:

(a) Persons empowered to bring a civil action
   A civil action may be brought—
   (1) by a participant or beneficiary—
   . . . .
   (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

. . . .

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

. . . .

The fundamental claim—that the Blackburns should be credited, for purposes of their duty to reimburse [the plan administrator], with sums paid to the attorney whose work produced the fund—arises under state law.

*Blackburn,* 115 F.3d at 495. This Court understands the language quoted above as meaning that any claim predicated upon the Illinois common fund doctrine "arises under" state law and not under § 502(a). Moreover, it simply would not make sense to treat this case as significantly different than *Blackburn* just because this is a separate action instead of an action ancillary to the underlying personal injury action. If district courts are to draw such a distinction, then *Blackburn* merely represents a preference for separate actions against plan administrators as opposed to petitions to apportion.

The defendant argues, however, that this case is distinguishable from *Blackburn* for a second reason. The defendant notes that, in this case, unlike *Blackburn,* the Plan specifically precludes a reduction of its lien for attorney's fees. Therefore, the defendant argues that the complete preemption doctrine should be applied. The defendant cites two cases in support of this argument. *Great West Life & Annuity Ins. Co. v. Moore,* 133 F.Supp.2d 677 (N.D.Ill.2001) (Judge Darrah) (holding that *Blackburn* was not controlling when the plan provided that its lien rights would not be reduced due to attorney's fees and costs); *McCotter v. Longo,* No. 95 C 5985, 1997 WL 630188 (N.D.Ill. Sept.30, 1997) (Magistrate Judge Lefkow) (holding that *Blackburn* was inapplicable when the plan expressly provided that its right to reimbursement would not be reduced for attor-

ney's fees). This Court respectfully disagrees with Judges Darrah and Lefkow. In *Great West,* Judge Darrah relied on Judge Lefkow's decision in *McCotter.* In *McCotter,* Judge Lefkow relied on *dicta* contained in the *Blackburn* decision. For reasons discussed below, this Court believes that Judge Lefkow misconstrued the Blackburn *dicta.*

In Blackburn, after holding that Section 502 was "irrelevant" to the common fund claim, Judge Easterbrook went on to discuss whether the common fund doctrine was "preempted" by Section 514(a).[3] *See id.* at 495. At this point, Judge Easterbrook was no longer discussing the scope of § 502(a), but rather, was mulling over the question of whether ERISA, through § 514(a), would provide a *defense* against the common fund doctrine. *See id.* Judge Easterbrook concluded that the common fund doctrine was not preempted by § 514(a). *See id.* Later, apparently still discussing § 514(a) conflict preemption, Judge Easterbrook stated that "[a] plan might have a better argument if its governing documents expressly required participants to pay their own legal fees (alternatively, to hire only attorneys who agree to waive the common-fund doctrine) and to remit the gross rather than the net proceeds from litigation." *Id.* at 496. This Court does not believe that the Seventh Circuit intended, through this *dicta,* to suggest an exception to the Court's very clear holding that common fund claims "arise under" state law—not § 502(a). *See id.* at 495.

■ Moreover, there is no other basis for concluding that *Blackburn* and this case are significantly different for the pur-

---

3.  Section 514(a) provides:

    Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

poses of complete preemption analysis. The claim in this case, like the claim in *Blackburn,* is outside the scope of § 502(a). In determining whether a claim is within the scope of § 502(a), three factors are examined: "(1) whether the plaintiff is eligible to bring a claim under that section; (2) whether the plaintiff's cause of action falls within the scope of an ERISA provision that the plaintiff can enforce via § 502(a), and (3) whether the plaintiff's state law claim cannot be resolved without an interpretation of the contract governed by federal law." *Jass,* 88 F.3d at 1487 (internal quotation marks and citations omitted). The law regarding the application of these three factors is not clear. It appears that a plaintiff's eligibility under § 502(a) is a prerequisite to a finding of complete preemption. *See Rice,* 65 F.3d at 641 (stating that "one prerequisite of complete preemption under § 502(a) is a plaintiff eligible to bring a claim under that section"). Moreover, in addition to satisfying the first element, it appears that *either* the second or third element must be satisfied as a prerequisite to complete preemption. *See id.* at 641–43 (holding that a state law claim neither arising under § 502(a) nor alleging a breach of an ERISA plan, may, nonetheless, be completely preempted if the claim requires a court to construe an ERISA plan).

In this case, the first element is not satisfied. Newcomb, the plan participant and beneficiary is not a party. The plaintiff, Newcomb's attorney, is not suing as a fiduciary. Rather, he is suing the alleged plan administrator on his own behalf. Under Illinois law, "the quasi-contractual right to payment of fees for services rendered belongs to the attorney who rendered the services and does not affect the contractual relationship between the plan participant and the plan." *Bishop v. Burgard,* 198 Ill.2d 495, 261 Ill.Dec. 733, 764 N.E.2d 24, 31 (Ill.2002).

Moreover, neither the second nor third element is satisfied. The plaintiff is suing under an equitable doctrine of Illinois common law that has nothing to do with the claims arising under § 502(a). The plaintiff's claim does not depend on any provision of ERISA, and the plaintiff's claim does not rest upon any provision of the Plan. Additionally, the plaintiff's claim does not require the Court to construe the terms of the Plan. While the common fund doctrine is contrary to one of the terms of the Plan, the Illinois courts apply the common fund doctrine irrespective of such contractual terms. *See Bishop v. Burgard,* 198 Ill.2d 495, 261 Ill.Dec. 733, 764 N.E.2d 24, 29–30 (Ill.2002) (relying on *Scholtens v. Schneider,* 173 Ill.2d 375, 219 Ill.Dec. 490, 671 N.E.2d 657 (Ill.1996)).

Therefore, for all the reasons discussed above, the Court concludes that there is no basis for federal subject matter jurisdiction, and the Court will grant the plaintiff's motion to remand. This decision is consistent with *Bishop v. Burgard,* where the Illinois Supreme Court concluded "that an action to recover fees under the common fund doctrine is an independent action invoking the attorney's right to the payment of fees for services rendered, an action that is not preempted by ERISA." 261 Ill.Dec. 733, 764 N.E.2d at 31. The defendant's reliance on *Lake v. Marten,* 946 F.Supp. 605 (N.D.Ill.1996) is misplaced as that case was decided without the benefit of the Seventh Circuit's decision in *Blackburn.*

## CONCLUSION

For the reasons discussed above, the motion to remand (Doc. 11) is **GRANTED.**

**IT IS SO ORDERED.**