VIOLA SWETS, Plaintiff-Appellee, v. ALFRED TOVAR, Defendant (The Village of Lansing, Intervenor-Appellant).

First District (1st Division)   No. 1—95—0192

Opinion filed November 4, 1996.

Ancel, Glink, Diamond, Cope & Bush, P.C., of Chicago (Robert K. Bush and John F. Donahue, of counsel), for appellant.

Van Der Aa, Lanting & Paarlberg, Ltd., of South Holland (James Lanting and John R. Russell, of counsel), for appellee.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Intervenor, the Village of Lansing (Village), appeals the January 18, 1995, order of the circuit court of Cook County adjudicating the amount of the Village's workers' compensation lien with regard to a personal injury lawsuit filed by plaintiff, Viola Swets, against defendant, Alfred Tovar. On appeal, the Village contends that the trial court erred in determining the distribution of a settlement between plaintiff and defendant. For the following reasons, we reverse the judgment of the trial court and remand this matter for further proceedings.

The record reveals the following relevant facts. On January 20, 1994, plaintiff was struck by an automobile driven by defendant while performing her employment duties as a school crossing guard for the Village. As a result, plaintiff suffered severe head injuries causing partial paralysis.

As of December 16, 1994, plaintiff had received medical benefits under the Illinois Workers' Compensation Act (the Act) (820 ILCS 305/1 et seq. (West 1994)) in the amount of $268,659.37, and temporary total disability benefits in the amount of $1,936.40. As plaintiff's employer, the Village is required to pay for all reasonable and necessary medical care pursuant to section 8(a) of the Act. 820

ILCS 305/8(a) (West 1994). Under section 8(b) of the Act, the Village is also required to pay plaintiff temporary total disability benefits as long as she remains totally incapacitated. 820 ILCS 305/8(b) (West 1994).

On February 3, 1994, plaintiff filed a personal injury lawsuit against defendant alleging that defendant's negligence was the proximate cause of the injuries she sustained on January 20, 1994. Section 5 of the Act required that plaintiff or her attorney notify the Village of the filing of her civil lawsuit either by personal service or registered mail, and further required that proof of such notification be filed in the civil action. See 820 ILCS 305/5 (West 1994).

However, the record does not show that either the plaintiff or her attorney, James Lanting (Lanting), ever notified the Village of the filing of the lawsuit against defendant. Further, there is no indication that any notification was ever filed in the circuit court.

On March 22, 1994, Janet Hood, the claims supervisor responsible for payment of compensation benefits to plaintiff, had a telephone conversation with Lanting. At that time, Lanting failed to inform Hood that a civil lawsuit was pending on plaintiff's behalf against defendant.

Subsequently, Lanting and plaintiff settled the lawsuit against defendant in the amount of $100,000, the policy limit of defendant's automobile insurance. After the settlement, defendant's attorney, James Balog, contacted Lanting and inquired as to whether Lanting was aware of any liens on the settlement funds. Lanting replied that he knew of no such liens.

On December 7, 1994, plaintiff's civil lawsuit was dismissed pursuant to a settlement agreement. The consent of the Village was neither requested nor given with regard to the settlement agreement.

On December 15, 1994, John F. Donahue, the attorney for the Village, contacted Lanting and learned for the first time of the civil lawsuit against defendant and the related settlement. On December 19, 1994, the Village filed motions as follows: a petition to intervene; a motion to adjudicate its workers' compensation lien; a motion for a temporary restraining order; a preliminary injunction; and a motion to vacate the dismissal order previously entered in the case.

A hearing commenced on that same day. At the hearing, Lanting represented to the trial court that the settlement funds, a total of $100,000, were being held in his attorney escrow account. The trial court granted the Village leave to intervene and ordered that the funds continue to be held in Lanting's escrow account without any disbursement, pending a hearing for adjudication of the amount of the Village's workers' compensation lien.

On January 18, 1995, the trial court entered an order distributing the $100,000 settlement as follows:

(1) Payment of plaintiff's attorney's one-third
contingent fee ..........................................$     33,333.33

(2) Reimbursement of costs to plaintiff's
attorney .................................................$       425.67

(3) Reimbursement of the Village's worker's
compensation lien ($100,000 — $33,333.33 —
$425.67) x .75 ......................................... $    49,680.75

(4) Additional attorney fees to plaintiff's attorney
($100,000 — $33,333.33 — $425.67) x .25 ...$    16,560.25

TOTAL ................................................$    100,000.00.

The Village filed a timely appeal of this distribution of the settlement funds.

On appeal, the Village contends that the trial court erred in calculating the amount owed the Village out of plaintiff's settlement. The Village argues that the trial court's distribution is contrary to the Workers' Compensation Act (Act). It is not disputed that under the Act the Village has a lien upon plaintiff's settlement award.

Section 5(b) of the Act provides in pertinent part as follows:

"(b) Where the injury or death for which compensation is payable under this Act was caused under circumstances creating a legal liability for damages on the part of some person other than his employer to pay damages, then legal proceedings may be taken against such other person to recover damages notwithstanding such employer's payment of or liability to pay compensation under this Act. In such case, however, if the action against such other person is brought by the injured employee or his personal representative and judgment is obtained and paid, or settlement is made with or without suit, then from the amount received by such employee or personal representative there shall be paid to the employer the amount of compensation paid or to be paid by him to such employee or personal representative including amounts paid or to be paid pursuant to paragraph (a) of Section 8 of this Act.

Out of any reimbursement received by the employer pursuant to this Section, the employer shall pay his pro rata share of all costs and reasonable necessary expenses in connection with such third-party claim, action or suit and where the services of an attorney at law of the employee or dependents have resulted in or substantially contributed to the procurement by suit, settlement

or otherwise of the proceeds out of which the employer is reimbursed, then, in the absence of other agreement, the employer shall pay such attorney 25% of the gross amount of such reimbursement." 820 ILCS 305/5(b) (West 1994).

The Village argues that the trial court's order is contrary to the Act as follows: (1) the order reduces the $100,000 settlement amount by plaintiff's attorneys' one-third contingent fee and costs; and (2) the order improperly augments plaintiff's attorney fees by awarding plaintiff's attorney an additional 25% out of the remaining funds.

■ Our supreme court has determined that the plain meaning of the Act dictates "an employer who has paid compensation to an injured employee under the Act is entitled to be reimbursed from the entire third-party recovery by the employee." *Page v. Hibbard*, 119 Ill. 2d 41, 47, 518 N.E.2d 69, 71 (1987). Moreover, an employer's worker's compensation lien cannot be reduced or prejudiced by the fact that the employee entered into a contingent fee contract with his or her attorney requiring a fee in excess of the 25% allowed under the Act. *Mounce v. Tri-State Motor Transit Co.*, 150 Ill. App. 3d 806, 811, 502 N.E.2d 53, 56-57 (1986). The words in section 5(b) "in the absence of other agreement" have been construed by Illinois courts to refer to an agreement between the employer-intervenor and the employee or his attorney. *Lewis v. Riverside Hospital*, 116 Ill. App. 3d 845, 850-51, 452 N.E.2d 611 (1983), citing, *inter alia*, *Vandygriff v. Commonwealth Edison Co.*, 68 Ill. App. 3d 396, 397, 386 N.E.2d 318 (1979); *Railkar v. Boll*, 125 Ill. App. 2d 203, 206, 260 N.E.2d 851 (1970).

In *Vandygriff*, this court reversed an order of the trial court compelling the plaintiff's employer to pay the plaintiff's attorneys a 40% fee based on the plaintiff's contract with his attorneys. This court concluded:

"Clearly, in the present case the plaintiff's attorneys' fees for obtaining reimbursement for Newberg must be based on the 25% statutory fee and not the plaintiff's contract with his attorneys." *Vandygriff*, 68 Ill. App. 3d at 397-98.

Similarly, in *Railkar*, the plaintiff recovered a judgment in the amount of $5,000, for personal injuries against a defendant after receiving workers' compensation benefits in the amount of $9,800, for the same injuries. Plaintiff had a 50% fee contingency contract with his attorney. Following adjudication of the liens of the plaintiff's employer, the circuit court awarded the plaintiff's attorney $2,137.89 for litigation expenses, then $806.27 for attorney fees based on 25% of the judgment as reduced by litigation expenses. On appeal, this court reversed, holding that, under the Act, the plaintiff's attorney was entitled to receive only 25% of the judgment, computed on the

entire judgment, rather than on the judgment as reduced by litigation expenses. *Railkar*, 125 Ill. App. 2d at 209.

In the present case, the trial court relied on *Carlson v. Powers*, 225 Ill. App. 3d 410, 587 N.E.2d 1240 (1992), in distributing plaintiff's settlement proceeds. *Carlson* involved the distribution of a settlement under the Hospital Lien Act (770 ILCS 35/5 (West 1992)). The *Carlson* court found that the Hospital Lien Act "expressly provides that liens filed pursuant to its provisions are inferior to attorneys' statutory liens." *Carlson*, 225 Ill. App. 3d at 413.

We find that the trial court erred in relying on *Carlson*, as the present case does not involve the Hospital Lien Act. The Workers' Compensation Act does not provide that attorney contingent agreements supersede the statutory fee amount of 25%.

Plaintiff responds that the cases relied upon by the Village were overruled in *Zuber v. Illinois Power Co.*, 135 Ill. 2d 407, 553 N.E.2d 385 (1990), citing *Zuber* for the proposition that "the fee contract entered into by the plaintiff and her attorneys controls the amount of compensation due counsel." *Zuber*, 135 Ill. 2d at 422. However, plaintiff has misinterpreted *Zuber* and cited the case out of context.

In *Zuber*, the plaintiff's decedent was seriously injured while working at Illinois Power Company and died the following day. Plaintiff was awarded workers' compensation benefits in the amount of $224.41 per week for a period of 20 years from the employer, R. Dron Electrical Company, Inc. Subsequently, plaintiff entered into a settlement with Illinois Power which provided for a lump sum payment of $302,466.54, and an annuity in the amount of $900 per month for the plaintiff's life, at a cost of $86,529. The plaintiff's attorney took one-third of the $302,466.54 lump sum payment, per a contingency contract, but did not claim a fee with respect to the annuity portion of the settlement. At the time of the settlement, the employer had already paid $73,128.63 in benefits under the Workers' Compensation Act. *Zuber*, 135 Ill. 2d at 410.

Following the settlement, the trial court determined the amount of attorney fees and costs to be paid by the employer pursuant to section 5(b) of the Act. The trial court allowed fees and costs only on the employer's past payments of workers' compensation benefits, the total of $73,128.63 in benefits that the employer had already paid through the time of the plaintiff's settlement with Illinois Power. The trial court deducted both a 25% attorney fee from the amount of past benefits in the amount of $18,282.16, and costs totalling $24,829.21, then assessed $4,469.25 as the employer's *pro rata* share of those expenses. The plaintiff placed $54,846.48 in an escrow account pending resolution of the amount due to the employer based on

its lien for past payments of workers' compensation benefits after the deduction of the undisputed attorney fee. The trial court subtracted the employer's share of the expenses ($4,469.25) from the amount in escrow and awarded the balance ($50,377.23) to the employer. *Zuber*, 135 Ill. 2d at 411.

The plaintiff appealed the trial court's apportionment of fees and costs. On appeal, this court determined that fees and costs recoverable under section 5(b) of the Act must be assessed not only against the past compensation benefits already paid by the employer, and for which the employer may claim a lien, but also against the future compensation benefits that the employer is relieved from paying as a result of the settlement. Basing its calculations on the weekly compensation award of $224.41, this court determined that the attorney fee attributable to that amount was $56.10, computed at the statutory rate of 25%, and that the employer's *pro rata* share of the costs was $14.32. This court computed costs in the same proportion as the weekly compensation payment bore to the total of the lump sum award ($302,466.54) and the cost of the annuity ($86,529) that were recovered in the settlement ($224.41/$388,995.54 x $24,829.21). This court ordered the employer to make payments of those amounts to the plaintiff directly on a weekly basis. This court also determined that the employer's proportionate share of the costs attributable to the benefits already received by the plaintiff was $4,667.89, and modified the amount to be returned to the employer in connection with its past payments of compensation benefits, accordingly.

Upon petition for rehearing, this court entered a clarification providing that weekly payments of attorney fees must be made to the plaintiff directly rather than to her attorneys. This court explained that the attorneys could not claim any additional fee from the employer pertaining to the annuity because the plaintiff had already paid counsel in full for the settlement of her action against Illinois Power. *Zuber*, 135 Ill. 2d at 413.

On appeal to our supreme court, the employer argued that the appellate court erred in assessing fees and costs against the workers' compensation benefits that the employer is relieved from paying in the future by reason of the plaintiff's settlement. The employer contended that, under the Act, such fees and costs may be assessed only against the amount of workers' compensation benefits already paid at the time of the third-party recovery and for which the employer may claim a lien by reason of that recovery.

Relying on, *inter alia*, *Lewis* and *Vandygriff*, the supreme court determined that the Act allows reimbursement of attorney fees and costs to an employer based on both workers' compensation benefits

already paid and credits against the employer's future compensation obligations.

However, the supreme court reversed that portion of the appellate court's opinion that allowed the employer to pay to the plaintiff directly the statutory attorney fees pertaining to the annuity award. The supreme court noted that, "[f]or our purposes here, the fee contract entered into by the plaintiff and her attorneys controls the amount of compensation due counsel." (Emphasis added.) 135 Ill. 2d at 422. The supreme court noted that although the contract entitled the attorneys to one-third of all amounts recovered on the plaintiff's behalf, "[t]hat her attorneys failed to take their contractual one-third of the annuity portion of the settlement does not mean that they were not otherwise entitled to a fee of that amount." 135 Ill. 2d at 422. Therefore, the supreme court concluded that because the plaintiff's attorneys did not receive any fee for recovery of the annuity, "in this case there will be no double recovery of fees if they are the recipients of the *statutorily required payments*" of 25%. *Zuber*, 135 Ill. 2d at 422.

■ Contrary to plaintiff's contention, *Zuber* did not hold that the Act is subservient to a contingent fee agreement, nor did *Zuber* in any way "tacitly" overrule the cases relied upon by the Village. It is clear that the plaintiff's attorneys in *Zuber* were able to recover a one-third contingent fee on the plaintiff's lump sum settlement of $302,466.54 because the lump sum payment was sufficient to satisfy both the reimbursement of the employer's previously paid workers' compensation benefits and the attorneys' one-third contingent fee, not because the contingent fee agreement had priority over the employer's lien.

In the present case, a deficiency exists in the amount of the settlement such that the amount recovered by plaintiff does not cover the expenses paid by the Village. Further, the record does not reveal that the $100,000 settlement was the product of any trial, discovery process, or any unusual services rendered by plaintiff's attorney Lanting for the benefit of the Village, as in *Zuber*. See, *e.g.*, *Scholtens v. Schneider*, 173 Ill. 2d 375, 385 (1996) (" 'a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.' [Citation.]"). To the contrary, Lanting merely settled the case for defendant's insurance policy limits and, despite the statutory requirement, failed to notify the Village of such settlement.

Thus, we conclude that the trial court improperly reduced plaintiff's settlement by one-third before distributing the remaining funds. In order to comply with the Act, the settlement proceeds must

be considered as a whole, *i.e.*, $100,000; then reduced by $25,000, representing the statutory 25% amount in fees to plaintiff's attorney; then reduced by plaintiff's attorney's costs of $425.67. The remaining $74,574.33 would be payable to the Village for workers' compensation benefits already paid.

For the reasons stated herein, we reverse the judgment of the trial court and remand this matter for an order consistent with this opinion.

Reversed and remanded.

BUCKLEY and WOLFSON, JJ., concur.