(No. 90742.—

CATHERINE R. BISHOP, Appellant, v. KELLY BUR-
GARD *et al.* (Administrative Committee, as Adm'r
of the Associates Health and Welfare Plan, Appel-
lee).

*Opinion filed January 25, 2002.*

J. Kevin Wolfe, of Harvey & Stuckel, Chtrd., of Peoria, for appellant.

Peter R. Bulmer, of Jackson, Lewis, Schnitzler & Krupman, of Chicago, for appellee.

Stanley L. Tucker, of Hartzell, Glidden, Tucker & Hartzell, of Carthage, for *amicus curiae* Illinois Trial Lawyers Association.

CHIEF JUSTICE HARRISON delivered the opinion of the court:

The issues presented in this appeal are, simply put, whether the circuit court lacked subject matter jurisdiction over a petition for adjudication of lien because the Employment Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1001 *et seq.* (1994)) preempted state court action, and whether the circuit court properly applied the common fund doctrine to reduce the amount the administrator of plaintiff's benefit plan received from plaintiff's settlement fund as reimbursement for medical benefits paid on plaintiff's behalf.

In this case, the circuit court of Tazewell County ruled that ERISA did not preempt state court action on plaintiff's motion to adjudicate lien, and that the common fund doctrine applied to reduce the amount the administrator of plaintiff's benefit plan would receive from settlement proceeds. In the ensuing appeal, the appellate court agreed with the circuit court's ruling on the preemption issue, but held that the circuit court had erred in applying the common fund doctrine rather than the terms of the plan, as the appellate court interpreted them. Accordingly, the appellate court reversed the judgment of the circuit court. 317 Ill. App. 3d 923. We allowed plaintiff's petition for leave to appeal (177 Ill. 2d R. 315(a)) and granted leave to the Illinois Trial Lawyers Association to submit a brief as *amicus curiae* in support

of the plaintiff. 155 Ill. 2d R. 345. For the reasons expressed below, we reverse the judgment of the appellate court.

The plaintiff, Catherine Bishop, incurred medical expenses in the amount of $8,576.30 as a result of injuries she sustained in an automobile accident on September 3, 1997, when her automobile was struck by a vehicle driven by the defendant, Kelly Burgard. Bishop was an employee of Wal-Mart and a participant in the company's ERISA plan. Pursuant to plan provisions, Bishop, or her healthcare providers, received payments totaling $8,576.30 from the plan for medical expenses Bishop had incurred.

Bishop retained counsel on February 17, 1998, signing an agreement under which she would pay her attorney a percentage of her recovery as attorney fees and costs. On June 9, 1998, Bishop filed a personal injury action against Burgard, seeking damages in excess of $50,000. Bishop's attorney ultimately procured a settlement offer of $21,500, which Bishop accepted. On February 19, 1999, Bishop's attorney filed a petition for adjudication of lien in the circuit court of Tazewell County, alleging (1) Blue Cross/Blue Shield (Blue Cross) had claimed a lien in the amount of $8,576.30 on any proceeds Bishop received as settlement, (2) Blue Cross had refused a request to reduce the lien by one-third to reflect attorney fees, asserting that Illinois' common fund doctrine did not apply, (3) pursuant to precedent established in *Scholtens v. Schneider*, 173 Ill. 2d 375 (1996), ERISA's conflict preemption doctrine does not preempt Illinois' common fund doctrine, and (4) under Illinois law, the common fund doctrine requires that the creator of the fund be reimbursed by Blue Cross for the reasonable value of the legal service rendered in protecting Blue Cross's subrogation lien. The *amount* of Blue Cross's lien was not disputed, nor was its validity. On March 10, 1999, an amended petition was filed, substitut-

ing the Associates Health and Welfare Plan as the lienholder claiming a right against the proceeds of settlement. Neither the original petition, nor the amended petition, refers to plan provisions which might require interpretation in this matter or control the outcome.

On April 13, 1999, the Administrative Committee, as administrator of the Associates Health and Welfare Plan, filed an emergency petition to intervene as of right. The Committee then filed a motion to dismiss the petition for adjudication pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1996)) on the ground that ERISA preempted the state court action. The circuit court denied the Committee's motion to dismiss. On May 28, 1999, Bishop filed a motion for summary judgment, asking that the circuit court apply Illinois' common fund doctrine to reduce the amount claimed by the plan, reflecting a proportionate reduction of one-third for attorney fees and an additional reduction for costs attributable to the plan's share of the recovery. On July 12, 1999, the Administrative Committee filed a response to Bishop's motion and a cross-motion for summary judgment against Bishop, seeking full reimbursement, pursuant to plan provisions, for the medical benefits it had paid as a result of the automobile accident. The Committee attached to its pleading the 1996 and 1998 versions of the benefit plan.

The plan's pertinent provisions for 1996 and 1998 differ slightly, but are consistent in most respects. Both versions contain a section entitled, "Right to Reduction and Reimbursement (Subrogation)," which gives the plan the right—under the terms of the 1996 provision:

"[to] recover (subrogate) [under the 1998 provision, "recover *or* subrogate" (emphasis added)] 100% of the benefits previously paid by the plan to the extent of any and all of the following:

* Any judgment, settlement, or any payment, made or to be made by a person considered responsible for

the condition giving rise to the expense or by their insurers.

* Any auto or recreational vehicle insurance coverages or benefits including, but not limited to, uninsured motorist coverage.

* Business and homeowners medical liability insurance coverage or payments.

* Attorney's fees."

Under a subsection entitled "Cooperation Required," plan participants are obliged to "cooperate to guarantee reimbursement to the Plan from third party benefits." Participants are prohibited from taking any action that would "hinder reimbursement of overpayment to the Plan after [the participant has] accepted benefits." Immediately following those indiscriminate admonishments, a "Note," without specific contextual reference, states, "All attorney's fees and court costs are the responsibility of the participant, not the Plan." Plan provisions do not expressly repudiate the common fund doctrine, nor do they specifically state that the participant will be obligated to pay *the plan's* attorney fees. Participants are advised:

"These rights apply regardless of whether such payments are designated as payment for, but not limited to:

* Pain and suffering
* Medical benefits
* Other specified damages
* Whether the participant has been made whole (i.e., fully compensated for his/her injuries):

Additionally, the Plan has the right to file suit on your behalf against any person or entity considered responsible for the condition giving rise to the medical expenses to recover benefits paid or to be paid by the Plan."

Another subsection, entitled "Participant's Responsibility Regarding Right of Recovery," provides,

"To aid the Plan in its enforcement of its right of recovery, reimbursement, and subrogation, the participant must, at the Plan's request and at its discretion:

* Take any action

\* Give information

\* Execute documents so required by the Plan."

This subsection concludes with an explanation of the term "subrogation": "Subrogation is when Wal-Mart pays your medical charges relating to your accident while waiting for the responsible party to settle. Repayment to the Plan of 100% will be made at the time the settlement is received by the associate, dependent, or their attorney."

The 1998 version of the plan contains several paragraphs under the subsection "Cooperation Required" that do not appear in the 1996 version, among them, two stating as follows:

"\* The Plan does not pay for nor is responsible for the participant's attorney's fees. Attorney's fees are to be paid solely by the participant.

\* Modification to this section regarding the right to reduction and reimbursement (subrogation) are [*sic*] made to clarify previous Plan wording."

On September 9, 1999, the circuit court, in an order that mentioned neither plan provisions nor the common fund doctrine, denied the Committee's motion and granted Bishop's motion, reducing by $3,025.09 the amount the plan was entitled to receive from the settlement proceeds.

As we have previously noted, the appellate court held that ERISA did *not* preempt state court action on plaintiff's motion to adjudicate lien; however, the appellate court concluded that the circuit court *had* erred in applying the common fund doctrine rather than the terms of the plan, as the appellate court interpreted them. In this appeal, we are asked to determine whether ERISA preempts application of the common fund doctrine in this context, and if not, whether, on these facts, the provisions of the benefit plan preclude application of the doctrine, and if so, whether those provisions are unenforceable because they violate public policy. The

standard of review in cases involving review of summary judgment is *de novo. Ragan v. Columbia Mutual Insurance Co.*, 183 Ill. 2d 342, 349 (1998).

We find the disposition of this case controlled by analytical principles espoused in *Scholtens*. In *Scholtens*, this court held that ERISA does not preempt application of Illinois' common fund doctrine (*Scholtens*, 173 Ill. 2d at 396), stating in the course of analysis that a claim for attorney fees based upon the doctrine is, "in substance if not in form," a "separate and distinct action," resting "upon equitable considerations of *quantum meruit* and the prevention of unjust enrichment"; an action "wholly independent of and unrelated to the underlying benefit plan"; a cause of action premised upon the rights of the attorney who rendered services. *Scholtens*, 173 Ill. 2d at 390.

In *Scholtens*, we held that section 514(a) of ERISA (29 U.S.C. § 1144(a) (1982)) does not preempt application of the common fund doctrine. That issue was fully addressed in *Scholtens*, and the Administrative Committee presents nothing to convince us that our *Scholtens* analysis was in error or that the facts of this case require a different result.

Preemption is disfavored. As we observed in *Scholtens*, a presumption exists in every preemption case that Congress did *not* intend to supplant state law. *Scholtens*, 173 Ill. 2d at 379. Preemption under section 514(a) is at best a nebulous concept which the United States Supreme Court is still struggling to clarify. While it appears that all members of the Court have now effectively abandoned statutory language as the sole tool to be used in discerning the scope of ERISA preemption, in favor of an inquiry focusing primarily on the objectives of the ERISA statute and the nature and effect of state laws on ERISA plans (*Egelhoff v. Egelhoff*, 532 U.S. 141, 146-47, 149 L. Ed. 2d 264, 271, 121 S. Ct. 1322, 1327 (2001); *New York*

*State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.*, 514 U.S. 645, 655-56, 131 L. Ed. 2d 695, 705, 115 S. Ct. 1671, 1677 (1995)), many members of the Court recognize that neither the shift in focus, nor years of effort, have succeeded in providing guidance to lower courts or in clarifying the scope of ERISA preemption. See *Egelhoff*, 532 U.S. at 152-61, 149 L. Ed. 2d at 275-80, 121 S. Ct. at 1330-35 (Scalia, J., concurring, joined by Ginsburg, J.; Breyer, J., dissenting, joined by Stevens, J.); *California Division of Labor Standards Enforcement v. Dillingham Construction, N.A., Inc.*, 519 U.S. 316, 335-36, 136 L. Ed. 2d 791, 806, 117 S. Ct. 832, 843 (1997) (Scalia, J., concurring, joined by Ginsburg, J.). In *Scholtens*, our discussion of section 514(a) preemption took into account the analytical revision of *Travelers* (*Scholtens*, 173 Ill. 2d at 383) and relevant factors currently utilized by the Court. We noted in *Scholtens* that the United States Supreme Court, in *Mackey v. Lanier Collections Agency & Service, Inc.*, "recognized that such actions [common fund claims] are not preempted by ERISA":

> " 'These cases—lawsuits against ERISA plans for run-of-the-mill state-law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan— are relatively commonplace. Petitioners and the United States (appearing here as *amicus curiae*) concede that these suits, although obviously affecting and involving ERISA plans and their trustees, are not pre-empted by ERISA § 514(a).' " *Scholtens*, 173 Ill. 2d at 391-92, quoting *Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 833, 100 L. Ed. 2d 836, 846, 108 S. Ct. 2182, 2187 (1988).

See generally *The Meadows v. Employers Health Insurance*, 47 F.3d 1006, 1008 (9th Cir. 1995) (ERISA does not preempt claims by a third party who sues the plan as an *independent* entity claiming damages). While the plan provisions in this case, unlike *Scholtens, do* address attorney fees, those provisions cannot govern the relationship between the plan and an independent entity, the at-

torney whose efforts created the common fund. *Scholtens* so held. Consequently, there is no need to revisit section 514(a) preemption here.

The Committee, however, points out that *Scholtens* only discussed *conflict* preemption under section 514 (a) of ERISA. The Committee argues that *complete* preemption under section 502(a) of ERISA (29 U.S.C § 1132(a) (1994)) applies and deprived the circuit court of subject matter jurisdiction in this case.

The complete preemption doctrine is a doctrine of federal jurisdiction which, under appropriate circumstances, permits recharacterization of a plaintiff's state law claim as a federal claim so that removal is proper. *Speciale v. Seybold*, 147 F.3d 612, 615 (7th Cir. 1998). Complete preemption under section 502(a) encompasses all claims by a participant or beneficiary to enforce his rights under an ERISA plan, whereas conflict preemption under section 514(a) preempts any state law that may "relate to" an ERISA plan. *Speciale*, 147 F.3d at 615.

The Committee claims that the motion to adjudicate lien in this case qualifies for complete preemption under section 502(a)(3) of ERISA (29 U.S.C. § 1132 (a)(3) (1994)), which provides for a civil action to be brought "by a participant, beneficiary, or fiduciary" of a plan. Three factors must be present before a state law claim comes within the scope of section 502(a): (1) the plaintiff must be eligible to bring a claim under that section; (2) the plaintiff's cause of action must fall within the scope of an ERISA provision that the plaintiff can enforce by utilizing section 502(a); and (3) the plaintiff's state law claim cannot be resolved without an interpretation of the contract governed by federal law. *Speciale*, 147 F.3d at 615.

The Committee argues that the motion to adjudicate liens in this case was a civil action brought by a plan par-

ticipant to obtain equitable relief, "to enforce or interpret the Plan's reimbursement provisions to require a one-third reduction under Illinois' common fund doctrine."

We refer again to our decision in *Scholtens*. This court made clear in *Scholtens* that the quasi-contractual right to payment of fees for services rendered belongs to the attorney who rendered the services and does not affect the contractual relationship between the plan participant and the plan. Because this point is central to our disposition, we quote at length from *Scholtens*:

"An employee benefit plan is in the nature of a contractual agreement between the employer, the plan and its fiduciaries, and the participants and beneficiaries. The claim for attorney fees at issue here did not arise out of that contractual agreement or any separate subrogation agreement executed between the Trustees and Scholtens. Rather, the claim for attorney fees arises independently of both the benefit plan and the subrogation agreement. Here, the attorney who represented Scholtens in his tort action, and who negotiated the settlement and obtained the proceeds from which the plan's subrogation lien will be paid, simply invoked his quasi-contractual right to payment of fees for services rendered in recovering the plan's subrogation lien. The quasi-contractual obligation he seeks to impose upon the Trustees arises independently of the benefit plan, resting instead upon equitable considerations of *quantum meruit* and the prevention of unjust enrichment. Accordingly, applying the common fund doctrine under the circumstances of this case does not alter the relationship or agreements formulated among the principal ERISA entities (*e.g.*, the employer, the plan fiduciaries, and the participants). It affects the relations between one of those entities (*i.e.*, the Trustees) and an outside party. In effect, the attorney who performed legal services that ultimately led to the recovery of the plan's subrogation lien instituted a separate and distinct action against the Trustees for unpaid fees. The action, in substance if not in form, is wholly independent of and unrelated to the underlying benefit plan." *Scholtens*, 173 Ill. 2d at 389-90.

Following *Scholtens*, the appellate court has repeatedly

concluded that an action to recover fees under the common fund doctrine is an independent action invoking the attorney's right to the payment of fees for services rendered, an action that is not preempted by ERISA. See *Hillenbrand v. Meyer Medical Group, S.C.*, 308 Ill. App. 3d 381, 389 (1999) (a common fund claim, which is wholly independent of a benefit plan, is brought by a third party, the attorney who represents the participant, to enforce the attorney's quasi-contractual right to payment for services rendered in recovering for the plan's benefit); *Health Cost Controls v. Sevilla*, 307 Ill. App. 3d 582, 590 (1999) (state court "indisputably" has subject matter jurisdiction over common fund claims, which are not preempted by ERISA); *LeFevre, Zeman, Oldfield & Schwarm Law Group, Ltd. v. Wal-Mart Stores, Inc.*, 302 Ill. App. 3d 1059, 1068 (1999) (like a claim under the common fund doctrine, a claim brought pursuant to the Illinois Attorneys Lien Act (770 ILCS 5/1 (West 1994)) is an independent action wholly unrelated to an underlying benefit plan, a claim does not arise out of the contractual agreement between the parties, and one which is not preempted by ERISA).

To better illustrate the independent nature of an attorney's claim under the common fund doctrine, and to demonstrate that its assertion does not involve the provisions of this plan, we need only look to this court's decision in *Baier v. State Farm Insurance Co.*, 66 Ill. 2d 119 (1977), which served as a foundation for our analysis in *Scholtens*. In *Baier*, the plaintiff, an attorney, had represented a motorist in a claim for damages arising out of an automobile accident. The attorney ultimately negotiated a settlement between the injured motorist and the tortfeasor. The injured motorist used a portion of the settlement proceeds to reimburse State Farm, pursuant to a subrogation agreement, for medical benefits State Farm had paid the motorist following the accident.

Following dismissal of the negligence action, the attorney brought a separate action against State Farm to recover a fee for the services he had performed in recovering State Farm's subrogation lien. There was no allegation of a contract of employment, express or implied, between the attorney and State Farm. Rather, the claim for fees was based on the equitable concept that an attorney who performs services in creating a fund should, in equity and good conscience, be allowed compensation from all those who seek to benefit from the fund recovered. *Baier*, 66 Ill. 2d at 124. In applying the common fund doctrine, this court specifically rejected State Farm's claim that application of the doctrine would violate the subrogation agreement between the insured motorist and State Farm. *Baier*, 66 Ill. 2d at 126.

The implications of *Baier* in this case are twofold. First, as noted previously, it supports our conclusion in *Scholtens* that the common fund claim is, in effect, an independent action by the attorney who rendered services. Second, it shows that the common fund claim can be maintained by the attorney before or *after* reimbursement to the party who paid for medical expenses. See *Sprague v. Ticonic National Bank*, 307 U.S. 161, 170, 83 L. Ed. 1184, 1189, 59 S. Ct. 777, 782 (1939) (claim is an independent action that can be maintained after the original action has been concluded). Thus, the attorney making the claim in this case could have waited until Bishop had received her settlement and had reimbursed the plan in full before asserting his common fund claim, avoiding entirely the controversy over whether the common fund doctrine or the plan provisions controlled. We see no reason for a different result here because the attorney asserted his claim *before* reimbursement.

Because a claim under the common fund doctrine is an *independent action,* based upon the *attorney's rights,* and wholly *unrelated to the plan* itself, such a claim

simply does not fit the criteria for complete preemption under section 502(a)(3) of ERISA. The attorney who seeks compensation for services rendered to the plan is obviously not "a participant, beneficiary, or fiduciary" of the plan, and the attorney's action is unrelated to the plan. The Committee's attempt to create federal jurisdiction by interjecting plan interpretation into the case via its response and cross-motion for summary judgment fails because interpretation of the plan provisions is not necessary to determine the *attorney's* rights against the plan and because the Committee's defense is not part of the properly pleaded statement in the petition to adjudicate. The "well-pleaded complaint rule" provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. A defense is not part of plaintiff's properly pleaded statement of his or her claim. See *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475, 139 L. Ed. 2d 912, 918, 118 S. Ct. 921, 925 (1998). The well-pleaded complaint rule would apply to defeat federal jurisdiction. Section 502(a)(3) does not preempt application of the common fund doctrine on these facts.

While we recognize that some federal circuits may have reached a different conclusion as to sections 514 and 502(a) preemption on similar facts, federal circuit courts of appeals exercise no appellate jurisdiction over this court. See *People v. Kidd*, 129 Ill. 2d 432, 457 (1989). This court need not follow precedent of a particular federal circuit court where, as here, the Supreme Court has not ruled on the precise question presented, there is uncertainty among the federal circuit courts of appeals, and we believe a case is wrongly decided. *Weiland v. Telectronics Pacing Systems, Inc.*, 188 Ill. 2d 415, 423 (1999). Our analysis is based upon long-standing state precedent, our resolution of this matter is founded upon that precedent, and *we* need not engage in apologies for

want of equity and fairness as some federal courts have felt obliged to do. See *IBP, Inc. v. Foust*, 987 F. Supp. 714, 719-20 (N.D. Iowa 1997).

The Committee next contends that the common fund doctrine should not apply because the plan participated in the creation of the fund and the plan will not benefit from the fund. To sustain a claim under the common fund doctrine, the attorney must show that (1) the fund was created as the result of legal services performed by the attorney, (2) the subrogee or claimant did not participate in the creation of the fund, and (3) the subrogee or claimant benefited or will benefit from the fund that was created. See *Johnson v. State Farm Mutual Automobile Insurance Co.*, 323 Ill. App. 3d 376, 382 (2001); *Morris B. Chapman & Associates, Ltd. v. Kitzman*, 307 Ill. App. 3d 92, 105 (1999).

The Committee suggests that the plan participated in the creation of the fund by merely paying benefits. Not surprisingly, the Committee cites no authority in support of this novel proposition. We are aware of none, and we see no need to devote more space to this specious argument than the three sentences the Committee thought it deserved in briefing.

The Committee's contention that it would not benefit from the fund warrants brief comment. The Committee argues that the plan will not benefit from the fund because 100% reimbursement will merely return it to the position it enjoyed prior to Bishop's accident, before the plan paid out benefits. According to the Committee, "the Plan will not be *unjustly* enriched by the requested 100% reimbursement. It merely seeks to enforce the plan language to which Bishop voluntarily agreed to be bound when she enrolled for participation in the Plan." (Emphasis in original.)

The Committee is either being disingenuous or it has entirely missed the point of our decision in *Scholtens* and

the purpose of the common fund doctrine. The common fund doctrine rests upon the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 62 L. Ed. 2d 676, 682, 100 S. Ct. 745, 749 (1980). In this state, as in many others (see *Phillips v. State Farm Mutual Automobile Insurance Co.*, 73 F.3d 1535, 1538-39 (10th Cir. 1996)), the doctrine, in some form, has found expression in statutes (820 ILCS 305/5(b) (West 2000); 215 ILCS 105/8(h)(6) (West 2000)), and has been accorded public policy status by judicial decision (*Morris B. Chapman & Associates, Ltd. v. Kitzman*, 193 Ill. 2d 560, 568-70 (2000), citing *Scholtens*, 173 Ill. 2d at 385). The doctrine has been applied against the State Employees' Retirement System of Illinois (SERS), despite administrative regulations (80 Ill. Adm. Code § 1540.90(a)(5) (1997)) intended to override its application, where SERS had "clearly benefit[ed] from the services of [participant's] attorney" by achieving a setoff. *Young v. Mory*, 294 Ill. App. 3d 839, 849 (1998).

Even more to the point is *Taylor v. State Universities Retirement System*, 203 Ill. App. 3d 513 (1990). In *Taylor*, the appellate court upheld a judgment for attorney fees rendered pursuant to the common fund doctrine under circumstances very similar to the facts in this case. In that case, an attorney, Taylor, represented Burwell, obtaining for him an award of benefits under the Occupational Diseases Act from which the State Universities Retirement System (SURS) recouped disability benefits it had previously paid Burwell. SURS did not in any way participate in the creation of the fund. The appellate court held that SURS "definitely benefited from the creation of that fund by obtaining a recoupment of $6,954.66, which it would not have received absent the fund's creation." *Taylor*, 203 Ill. App. 3d at 520. Clearly, the plan in this case benefited from Bishop's lawsuit and the efforts of her attorney, just as SURS did in *Taylor*.

But for Bishop's action, and the efforts of her attorney, there would have been no fund from which the plan could have obtained reimbursement. For purposes of applying the common fund doctrine, it is irrelevant that the party who benefits from a lawyer's services has a *right* to compensation, be it an undifferentiated right of reimbursement or subrogation as is asserted here, or a right to compensation under some other theory. Obviously, everyone who brings a legal action is asserting some claim of right. However, a mere right may amount to nothing more than a possibility unless it is properly asserted. That is the point. The real question is whether the plan obtained the benefit of a lawsuit without contributing to its costs. See *Boeing*, 444 U.S. at 478, 62 L. Ed. 2d at 682, 100 S. Ct. at 749. If so, it was unjustly enriched for purposes of applying the common fund doctrine. The policy behind the fund doctrine is to prevent subrogees from "freeloading." *Principal Mutual Life Insurance Co. v. Baron*, 964 F. Supp. 1221, 1224 (N.D. Ill. 1997). "If the costs of litigation are not spread to the beneficiaries of the fund, they will be unjustly enriched by the attorney's efforts." *Chapman*, 193 Ill. 2d at 573, citing *Scholtens*, 173 Ill. 2d at 385. These principles undoubtedly apply to the facts of this case.

Because we view the motion for adjudication in this case as an independent action by the attorney, which is unrelated to the benefit plan and does not alter the contractual relationship of the parties thereto, we affirm the judgment of the circuit court as to the disposition of the settlement fund. For the foregoing reasons, we find that summary judgment was proper in this case. The judgment of the appellate court is reversed, and that of the circuit court is affirmed.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*