MATTHEW J. STEVENS, Plaintiff and Counterdefendant-Appellee, v. COUNTRY MUTUAL INSURANCE COMPANY, Defendant and Counterplaintiff-Appellant.

Fourth District   No. 4—08—0216

Opinion filed December 31, 2008.—Rehearing denied January 30, 2009.

APPLETON, J., dissenting.

Karen L. Kendall and Craig L. Unrath, both of Heyl, Royster, Voelker & Allen, of Peoria, and Gary S. Schwab and Scott D. Spooner, both of Heyl, Royster, Voelker & Allen, of Springfield, for appellant.

Bruce A. Beeman, of Wolter, Beeman & Lynch, of Springfield, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

Defendant and counterplaintiff, Country Mutual Insurance Company (Country), appeals from the trial court's March 2008 order, denying its motion for summary judgment and granting summary judgment in favor of plaintiff and counterdefendant, Matthew J. Stevens, for attorney fees under the common-fund doctrine and section 155 of the Illinois Insurance Code (Code) (215 ILCS 5/155 (West 2006)). Because we conclude that (1) Country benefitted from the creation of the common fund and (2) the court's imposition of additional attorney fees pursuant to section 155 of the Code could have been based, in part, on Country's good-faith claim, we affirm and remand with directions.

## I. BACKGROUND

The following facts were taken from the parties' pleadings and affidavits.

In August 2005, Stevens, who was insured by Country, suffered injuries caused by an automobile accident with another motorist, Heather Phares, who was insured by State Farm Mutual Automobile Insurance Company (State Farm). Later that month, Stevens' attorney, Bruce A. Beeman, sought to enforce Stevens' claim against Phares by (1) informing State Farm of his attorney's lien for fees, pursuant to section 1 of the Attorneys Lien Act (770 ILCS 5/1 (West 2006)), and

(2) requesting that State Farm disclose Phares' maximum liability coverage pursuant to section 143.24b of the Code (215 ILCS 5/143.24b (West 2006)).

To partially defray his medical expenses, which totaled about $151,587, Stevens received $20,420.60 from Country under the terms of his medical-payments coverage policy. The policy provisions also entitled Country to later recover the $20,420.60 it paid to Stevens. Specifically, paragraph 9 of the general policy conditions section of Stevens' policy reads as follows:

"9. Our Right to Recover Payment

a. If *we* make payment under this policy, other than [d]eath [b]enefit, *** and the person to or for whom payment was made has a right to recover damages, *we* will be subrogated to that right (have that right transferred to *us*). That person must do whatever is necessary to enable *us* to exercise *our* rights and must do nothing after the loss to prejudice *our* rights.

b. If *we* make a payment under this policy other than [d]eath [b]enefit, *** and the person to or for whom payment was made recovers damages from another, that person must hold the proceeds of the recovery in trust for *us* and must reimburse *us* to the extent of *our* payment." (Emphasis in original.)

In October 2006, a Country employee, who identified herself as a "Subrogation Specialist," sent a letter to State Farm, entitled "Notice of Recovery Interest," stating, in pertinent part, the following:

"Our investigation *** indicates that your insured's negligence was the cause of injuries to our insured ***.

We have made payments for the treatment received as a result of the *** accident. This letter is to place you on notice of our recovery interests."

Country's letter to State Farm was later forwarded to Beeman's office.

In June 2007, Beeman sent a letter to a Country claims representative, confirming their earlier conversation that (1) Country did not intend to pursue an action against Phares; (2) Country authorized him to accept State Farm's $50,000 settlement offer, which represented Phares' maximum liability coverage; and (3) Stevens intended to file a claim for $50,000 under the terms of his $100,000 underinsured-motorist coverage policy with Country. In addition, Beeman requested that Country waive its subrogation lien for medical benefits paid. In August 2007, Country responded as follows:

"I am in receipt of your demand of $50,000 for the under[ ]insured claim on our policy. Please be advised that we will not waive our subrogation lien for medical benefits paid under the policy.

Attached is a draft in the amount of $29,579.40 in payment for the under[ ]insured claim. This figure is based on our policy limit

of $100,000 less $50,000 paid by State Farm, less $20,420.60 in medical paid[,] leaving the amount payable at $29,579.40 ***." (Country did not enclose the draft in its response to Stevens.)

In October 2007, State Farm issued a $50,000 check to Stevens pursuant to the settlement agreement that Country had previously approved. The check specifically listed, in part, Stevens, Beeman, and Country as payees. Consistent with its August 2007 letter, Country did not endorse the State Farm settlement check. Later that month, Stevens filed a complaint to adjudicate Country's subrogation lien, arguing that Country was obligated to pay one-third of its subrogation lien for attorney fees.

In December 2007 and February 2008, Stevens and Country, respectively, filed cross-motions for summary judgment pursuant to section 2—1005 of the Code of Civil Procedure (735 ILCS 5/2—1005 (West 2006)). Stevens argued that under the common-fund doctrine, Country was entitled to recover only two-thirds, or $13,613.72, of its $20,420.60 subrogation lien. Thus, Stevens contended that Country owed an additional $6,806.88. Country argued that under the terms of its underinsured-motorist policy, Stevens was not entitled to more than $29,579.40. Specifically, Country contended that sections 2c, 2d, and 2e of its policy—pertaining to limits of liability for uninsured and underinsured motorists—applied as follows:

"c. Amounts payable for damages under [u]ninsured-[u]nderinsured [m]otorists *** will be reduced by
(1) all sums paid by or on behalf of persons or organizations who may be legally responsible for the bodily injury. ***
* * *
d. *** Any payments under coverages in [s]ection 2 of this policy either to or for an *insured* will reduce any amount that person is entitled to receive under *** [the] [u]nderinsured[-m]otorists coverage of this policy.

e. Amounts payable for damages under [u]nderinsured[-m]otorist coverage will be reduced by all sums paid under [m]edical [p]ayments *** coverage of any personal vehicle policy issued by *us*. Any payment under coverages in Section 2 of this policy either to or for an *insured* will reduce any amount that person is entitled to receive under Section 1, [l]iability, [m]edical [p]ayments, [p]ersonal[-i]njury [p]rotection[,] or [u]ninsured[-m]otorists coverage of this policy." (Emphases in original.)

In March 2008, the trial court entered a written order granting Stevens' motion for summary judgment. Specifically, the court ordered Country to (1) endorse the $50,000 check from State Farm; (2) remit $29,579.40 to Stevens, which represented the balance of Stevens' underinsured-motorist coverage; and (3) remit $6,806.88 to Stevens,

which represented one-third of Country's subrogation lien for medical payments under the common-fund doctrine. In addition, the court ordered Country to pay Stevens $4,084 pursuant to section 155 of the Code (215 ILCS 5/155 (West 2006)) because Country unreasonably delayed settling Stevens' claim.

This appeal followed.

## II. THE TRIAL COURT'S GRANT OF SUMMARY JUDGMENT

Country argues that the trial court erred by granting Stevens' motion for summary judgment. Specifically, Country contends that (1) the common-fund doctrine does not apply because (a) it did not receive any benefit from the common fund and (b) the medical payments Country made to Stevens were recovered under the terms of its underinsured-motorist coverage and (2) the court's imposition of additional attorney fees pursuant to section 155 of the Code (215 ILCS 5/155 (West 2006)) was inappropriate because it acted in good faith. We address Country's contentions in turn.

### A. Country's Claim That the Common-Fund Doctrine Does Not Apply

#### 1. *Summary Judgment and the Standard of Review*

Section 2—1005(b) of the Code provides as follows:

"A defendant may, at any time, move with or without supporting affidavits for a summary judgment in his or her favor as to all or any part of the relief sought against him or her." 735 ILCS 5/2—1005(b) (West 2006).

"Summary judgment is appropriate where the pleadings, depositions, admissions[,] and affidavits on file, viewed in the light most favorable to the nonmoving party, reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kajima Construction Services, Inc. v. St. Paul Fire & Marine Insurance Co.*, 227 Ill. 2d 102, 106, 879 N.E.2d 305, 308 (2007); 735 ILCS 5/2—1005(c) (West 2006). Summary judgment should be granted only if the movant's right to judgment is clear and free from doubt. *Bluestar Energy Services, Inc. v. Illinois Commerce Comm'n*, 374 Ill. App. 3d 990, 993, 871 N.E.2d 880, 884 (2007). We review *de novo* a trial court's grant of summary judgment. *Reppert v. Southern Illinois University*, 375 Ill. App. 3d 502, 504, 874 N.E.2d 905, 907 (2007).

#### 2. *The Common-Fund Doctrine*

■ In *Ritter v. Hachmeister*, 356 Ill. App. 3d 926, 827 N.E.2d 504 (2005), the Second District succinctly summarized the underlying rationale governing the application of the common-fund doctrine as follows:

" 'The common[-]fund doctrine allows an attorney "who creates, preserves, or increases the value of a fund in which others have an ownership interest to be reimbursed from that fund for litigation expenses incurred, including counsel fees." [Citation.] The doctrine "rests upon the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched." [Citation.] The basis for the court's authority to award fees under this doctrine is the power to do equity in a particular situation.' " *Ritter*, 356 Ill. App. 3d at 929, 827 N.E.2d at 506, quoting *Linker v. Allstate Insurance Co.*, 342 Ill. App. 3d 764, 770, 794 N.E.2d 945, 950 (2003).

### 3. *Country's Claim That It Did Not Receive Any Benefit From the Common Fund*

■ Country contends that the common-fund doctrine does not apply because it did not receive any benefit from the common fund. We disagree.

" 'To sustain a claim under the common[-]fund doctrine, the attorney must show that (1) the fund was created as the result of legal services performed by the attorney, (2) the subrogee or claimant did not participate in the creation of the fund, and (3) the subrogee or claimant benefited or will benefit from the fund that was created.' " *Linker*, 342 Ill. App. 3d at 770, 794 N.E.2d at 950, quoting *Bishop v. Burgard*, 198 Ill. 2d 495, 508, 764 N.E.2d 24, 33 (2002).

In this case, the pleadings and affidavits show the following undisputed facts: (1) Stevens sustained injuries resulting from an automobile collision with Phares, (2) Country paid $20,420.60 to Stevens under the terms of its medical-payments coverage policy, (3) thereafter, Beeman pursued Phares' insurance company, State Farm, for damages on Stevens' behalf, (4) Beeman created a $50,000 common fund as the result of his legal services, and (5) Country did not participate in the creation of the common fund.

Contrary to Country's assertion, our review of the pleadings and affidavits reveals that Country did benefit from the creation of the common fund. Specifically, but for Beeman's actions, Country would have expended substantial administrative and legal resources to recover the $20,420.60 it paid to Stevens under section 9a of its subrogation agreement. In addition, under the terms of section 9b, which are applicable to the facts of this case, Stevens was obligated to hold the proceeds of the common fund Beeman created on Stevens' behalf in trust for Country and reimburse it to the extent of its medical payments to Stevens. Indeed, Country specifically notified State Farm and Beeman of its subrogation lien for medical payments in its "Notice of Recovery Interest." Further, Country was able to limit its

liability by deducting the $50,000 common fund created by Beeman from Stevens' subsequent underinsured-motorist claim.

Moreover, at no time did Country expressly state to Beeman that it (1) did not want him to take action to recover its subrogation lien and (2) would not pay him if he did. See *Tenney v. American Family Mutual Insurance Co.*, 128 Ill. App. 3d 121, 124, 470 N.E.2d 6, 9 (1984) (a plaintiff may not recover attorney fees under the common-fund doctrine while rendering services for an unwilling recipient). To the contrary, the record shows that Country (1) approved Beeman's acceptance of State Farm's settlement, (2) would not waive its subrogation lien, and (3) did not intend to pursue a claim against Phares.

Because Country was unjustly enriched by Beeman's actions on Stevens' behalf, we reject Country's contention that the common-fund doctrine did not apply because it did not receive any benefit from the fund.

### 4. Country's Recovery of Medical Payments Under Its Underinsured-Motorist Policy

Country next contends that the common-fund doctrine does not apply because the medical payments provided to Stevens were reimbursed from its underinsured-motorist coverage pursuant to its insurance policy with Stevens. We decline to address the merits of Country's argument.

The common-fund doctrine is invoked by someone who is not a party to the contractual agreement between, for example, an insured and his insurer, to recover an unpaid debt—namely, a reasonable fee in *quantum meruit* for legal services rendered. *Scholtens v. Schneider*, 173 Ill. 2d 375, 391, 671 N.E.2d 657, 665 (1996). "[A]n attorney who performs services in creating a fund should in equity and good conscience be allowed compensation out of the whole fund from those who seek to benefit from it." *Tenney*, 128 Ill. App. 3d at 122, 470 N.E.2d at 7.

We first note that by its very nature, an action for attorney fees under the common-fund doctrine is usually brought in a separate motion by the attorney who seeks enforcement of the equitable remedy. Here, the motion to dismiss and the underlying complaint to adjudicate Country's subrogation claim were filed by Beeman on Stevens' behalf. However, because the trial court, in its written order for summary judgment, found that Beeman was "asserting [his] own claim against [Country] *** for attorneys fees under the [common-]fund doctrine"—a finding the parties do not contest on appeal—this issue is not properly before us.

Further, we need not address Country's contention because Bee-

man's claim for attorney fees under the common-fund doctrine does not depend upon the insurance-policy language between Stevens and Country. See *Baier v. State Farm Insurance Co.*, 66 Ill. 2d 119, 126, 361 N.E.2d 1100, 1103 (1977) (where the supreme court rejected State Farm's assertion that application of the common-fund doctrine would violate the subrogation agreement between it and the insured motorist); *Scholtens*, 173 Ill. 2d at 391, 671 N.E.2d at 665 (where the supreme court held that a quasi-contractual obligation to pay fees under common-fund doctrine arises wholly independently of, and is unrelated to, a contractual subrogation agreement between the parties). Thus, because we have previously held that Country benefitted from the common fund created solely by Beeman, the fact that Country's policy with Stevens allowed it to recover medical payments made through its underinsured-motorist coverage does not negate its obligation to pay Beeman for his services in creating the common fund.

### B. The Trial Court's Imposition of Additional Attorney Fees

Country also argues that the trial court's imposition of additional attorney fees pursuant to section 155 of the Code (215 ILCS 5/155 (West 2006)) was inappropriate because it acted in good faith. On this issue, we remand with directions.

■ Section 155 of the Code provides, in pertinent part, the following:

> "In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:
>
> (a) 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs[.]" 215 ILCS 5/155 (West 2006).

In its written order for summary judgment, the trial found as follows:

> "Since the underlying [claim with State Farm] was settled by [Beeman], [Country has] filed several motions in an attempt to avoid paying [Beeman] under the [common-]fund doctrine ***. These motions have included a [m]otion to [d]ismiss with [p]rejudice, a [c]ounter-claim for [d]eclaratory [r]elief, and finally, a [m]otion for [s]ummary judgment ***. There has been unreasonable delay in settling the *** fee claim of [Beeman.] None of the motions filed by

[Country] explain why a subrogation claim was asserted, if it was not intended to be a subrogation claim."

The court then ordered Country to pay the additional statutory sum of $4,084, which represented 60% of the disputed $6,806.88 attorney fee.

■ " 'A court should consider the totality of the circumstances when deciding whether an insurer's actions are vexatious and unreasonable. Factors to consider are the insurer's attitude, whether the insured was forced to sue to recover, and whether the insured was deprived of the use of his property. If a *bona fide* dispute existed regarding the scope of the insurance coverage, an insurer's delay in settling the claim may not violate section 155.' " (Emphasis added.) *Gaston v. Founders Insurance Co.*, 365 Ill. App. 3d 303, 325, 847 N.E.2d 523, 541 (2006), quoting *Valdovinos v. Gallant Insurance Co.*, 314 Ill. App. 3d 1018, 1021, 733 N.E.2d 886, 889 (2000).

■ In this case, we conclude that Country's contention that the common-fund doctrine did not apply because its medical payments were reimbursed through its underinsured-motorist policy provision presented a *bona fide* dispute. However, this conclusion does not resolve the issue. We note that the trial court's imposition of additional attorney fees pursuant to section 155 of the Code was based on the "several" motions Country filed in an attempt to avoid paying Beeman under the common-fund doctrine. Thus, we remand to the trial court for reconsideration of its imposition of additional attorney fees pursuant to section 155 of the Code under the totality of the circumstances excluding Country's motion for summary judgment. In so concluding, we explicitly decline to express any view on whether imposition of additional attorney fees would be appropriate.

### III. CONCLUSION

For the reasons stated, we affirm the trial court's order for summary judgment and remand for reconsideration of attorney fees under section 155 of the Code (215 ILCS 5/155 (West 2006)).

Affirmed and remanded with directions.

TURNER, J., concurs.

JUSTICE APPLETON, dissenting:

I respectfully dissent from the majority's decision in this case because I do not find that the common-fund doctrine applies to either the medical-payment or underinsured-motorist benefits paid by Country.

If an attorney creates a fund in which someone other than the attorney and his or her client has an interest, the common-fund doctrine allows the attorney to seek payment of fees by the nonclient for the proportional share of the fees due, to prevent the nonclient from being unjustly enriched by the attorney's efforts. See *Brundidge v. Glendale Federal Bank, F.S.B.*, 168 Ill. 2d 235, 238, 659 N.E.2d 909, 911 (1995); *Scholtens v. Schneider*, 173 Ill. 2d 375, 385, 671 N.E.2d 657, 662-63 (1996). Plaintiff here sued the tortfeasor and secured a settlement of $50,000. Plaintiff also had his own policy of insurance with Country, which included both coverage for medical expenses and underinsured-motorist coverage. Without claiming any right of subrogation, Country allowed plaintiff to settle his claim against the tortfeasor. Country voluntarily paid the amounts due under the medical-payment provision of its policy with plaintiff. Upon settlement between plaintiff and the tortfeasor, Country then issued a check to plaintiff for the bargained-for underinsured-motorist coverage ($100,000), deducting first the amount of the settlement with the tortfeasor ($50,000) and then the amounts it had paid for plaintiff's medical expenses ($20,420.60), as provided in the insurance contract.

I would ask, where, under these circumstances, is the "fund" created by plaintiff's counsel's efforts? It appears to me there is none. The fees that counsel sought constitute one-third of the medical payments made under the "med pay" provisions of plaintiff's policy with Country. The repayment of the $20,420.60 to Country was not from the proceeds of the settlement with the tortfeasor but, rather, was a deduction from the underinsured-motorist coverage payment wholly controlled by Country and paid to plaintiff pursuant to the insurance contract. Plaintiff's counsel did *nothing* to create that "fund." It arose by operation of plaintiff's contract of insurance with Country. While the majority would find Country was unjustly enriched by reason of the efforts of plaintiff's attorneys, I believe plaintiff's attorneys are, by the majority's decision, unjustly enriched by Country's compliance with its insurance contract with plaintiff.

Country did not file a notice of subrogation against either the tortfeasor's insurer or plaintiff's counsel. Country had no need to do so, because the recoupment of the medical payments advanced by it came from the reduction of its liability under the underinsured-motorist coverage, not by way of reimbursement from any funds generated by plaintiff's counsel's efforts.

As I believe Country is correct in its position, I would also reverse the award of additional fees to plaintiff's counsel for vexatious delay, which I find neither vexatious nor in bad faith but completely justified.