# Illinois Official Reports

## Appellate Court

*Waterhouse v. Robinson*, 2017 IL App (4th) 160433

| | |
|---|---|
| Appellate Court Caption | DONALD T. WATERHOUSE, Plaintiff-Appellant, v. GEORGE D. ROBINSON, Defendant-Appellee (State Farm Mutual Automobile Insurance Company, Appellee). |
| District & No. | Fourth District<br>Docket No. 4-16-0433 |
| Rule 23 order filed<br>Rule 23 order withdrawn<br>Opinion filed | February 28, 2017<br><br>March 29, 2017<br>March 29, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Macon County, No. 14-L-128; the Hon. Scott B. Diamond, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part. |
| Counsel on Appeal | Stephanie I. Shay-Williams and Timothy M. Shay (argued), of Shay & Associates, of Decatur, for appellant.<br><br>Michael J. Holt, of Hennessy & Roach, P.C., of Springfield, for appellee George D. Robinson.<br><br>Joseph W. Foley and Barbara Snow Mirdo (argued), of Thielen Law Offices, of Bloomington, for other appellee. |

PRESIDING JUSTICE TURNER delivered the judgment of the court, with opinion.
Justices Appleton and Pope concurred in the judgment and opinion.

**OPINION**

¶ 1      In November 2014, plaintiff, Donald T. Waterhouse, filed a negligence complaint against defendant, George D. Robinson, related to a January 2014 motor vehicle accident. In November 2015, plaintiff filed a motion to adjudicate liens, noting both Blue Cross Blue Shield and appellee, State Farm Mutual Automobile Insurance Company (State Farm), had asserted liens for medical expenses they paid related to plaintiff's injuries in the January 2014 accident. In his motion, plaintiff asserted that, under the common-fund doctrine, Blue Cross Blue Shield and State Farm had to reduce their liens by one-third and assume the *pro rata* share of the litigation costs. Plaintiff settled with Blue Cross Blue Shield, and in March 2016, the Macon County circuit court entered a judgment, denying plaintiff's motion as to State Farm. In May 2016, defendant filed a motion to enforce the parties' settlement and dismiss the case with prejudice. That same month, the court entered a written judgment granting defendant's motion. In July 2016, the court entered an amended judgment.

¶ 2      Plaintiff appeals, contending the circuit court erred by holding the common-fund doctrine was inapplicable to State Farm's lien based on payments it made to plaintiff under the insurance policy's medical payments coverage. We affirm in part and vacate in part.

¶ 3                         I. BACKGROUND

¶ 4      At around noon on January 18, 2014, plaintiff was walking in the parking lot of a Kroger store in Decatur, Illinois, when a vehicle driven by defendant collided with him. Defendant fled the scene. As a result of the collision, plaintiff sustained severe and permanent injuries. Both plaintiff and defendant were insured by State Farm. On January 27, 2014, State Farm sent plaintiff a letter, explaining the medical payments coverage contained in plaintiff's policy. The letter noted that, if State Farm made a payment to plaintiff under the medical payments coverage, State Farm was entitled to the right of subrogation to recover its payments.

¶ 5      In November 2014, plaintiff filed a negligence complaint against defendant. Defendant later tendered plaintiff a settlement consisting of his policy limit of $50,000. On November 5, 2015, State Farm sent plaintiff's attorney a letter, stating it was allowing plaintiff to accept defendant's $50,000 settlement offer. The letter further stated the following: "As of today we have paid $27,463.04 under your client's medical payments coverage. In the event that your client's case goes into Underinsured Motorist arbitration we will be taking this amount as an offset along with a credit of $50,000 which is being paid under [defendant]'s liability coverage."

¶ 6      On November 24, 2015, plaintiff filed a motion to adjudicate liens. In the motion, plaintiff stated Blue Cross Blue Shield had asserted a lien of an undetermined amount and State Farm had asserted a $27,463.04 lien. Both liens were associated with medical expenses paid for plaintiff's medical treatment related to the January 2014 collision. Plaintiff asserted that, under the common-fund doctrine, both Blue Cross Blue Shield and State Farm had to reduce their

liens by one-third and assume the *pro rata* share of the costs associated with this case. On January 15, 2016, the circuit court held a hearing on the motion to adjudicate liens. Plaintiff's attorney explained plaintiff's State Farm insurance policy had $100,000 in underinsured-motorist coverage and plaintiff had made a claim against it. If plaintiff settled with defendant, he could receive up to $50,000 under the underinsured-motorist coverage. Plaintiff's attorney also noted all of the other liens had been settled, including Blue Cross Blue Shield's. State Farm argued that, since it waived its subrogation rights as to the settlement, it was not receiving any money that could be reduced by the common-fund doctrine. At the end of the hearing, the court asked the parties to submit an order representing their respective theories in the case. Thereafter, the parties submitted more argument in support of their respective positions.

¶ 7     On February 8, 2016, the circuit court entered an order denying plaintiff's motion to adjudicate liens. The court found plaintiff's attorney had not created a fund from which State Farm benefited or will benefit and the issue of future contractual set-off rights with the underinsured-motorist arbitration was not before the court. Also, the court indicated the order would become part of a judgment that tied up all loose ends in the case. On March 1, 2016, the court entered a judgment. The judgment found the only issue remaining was the applicability of the common-fund doctrine to State Farm's lien and then incorporated the language from the February 2016 order.

¶ 8     Thereafter, defendant filed a motion to enforce settlement and to dismiss the cause with prejudice due to the settlement. Plaintiff objected to the motion. On May 13, 2016, the circuit court held a hearing on defendant's motion. In a May 17, 2016, written order, the court granted defendant's motion to enforce the settlement and ordered plaintiff to execute the tendered release provided by defendant within 14 days of the order. Within 14 days of receipt of plaintiff's executed release, defendant was to provide a $50,000 check payable to plaintiff and his attorney. Defendant filed a motion to correct the court's May 2016 order, which addressed typographical errors.

¶ 9     On June 9, 2016, plaintiff filed a timely notice of appeal in compliance with Illinois Supreme Court Rule 303 (eff. Jan. 1, 2015) and a motion to stay the May 2016 judgment. After a July 1, 2016, hearing, the court entered an amended order that fixed the errors and granted plaintiff's motion to stay. On July 6, 2016, plaintiff filed an amended notice of appeal, adding the date of the amended order. Accordingly, we have jurisdiction of this appeal under Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994).

¶ 10                                    II. ANALYSIS

¶ 11    The only issue on appeal is the applicability of the common-fund doctrine to State Farm's lien based on payments it made under the medical payments coverage provided by plaintiff's insurance policy. During the proceedings in this case, State Farm waived its subrogation rights to the $50,000 settlement between defendant and plaintiff. However, State Farm declared that, in the event plaintiff's case went into underinsured-motorist arbitration, it would take the $27,463.04 amount for medical payments as an offset, along with the credit of $50,000 that was paid under defendant's liability coverage. Plaintiff's underinsured-motorist claim was not part of this action against defendant, and the parties' arguments on the common-fund doctrine indicate proceedings on that claim are still ongoing.

¶ 12	The aforementioned facts lead us to begin our review with the question of whether the dispute over the application of the common-fund doctrine in this case presented a justiciable controversy subject to resolution by the circuit court. Under article VI, section 9, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. VI, § 9), "the existence of a 'justiciable matter' is a prerequisite to the circuit court's subject matter jurisdiction." *Ferguson v. Patton*, 2013 IL 112488, ¶ 21, 985 N.E.2d 1000. "Absent a justiciable matter, the circuit court had no authority to proceed." *Ferguson*, 2013 IL 112488, ¶ 21, 985 N.E.2d 1000. The issue of justiciability presents a question of law, and we review the issue *de novo*. *Ferguson*, 2013 IL 112488, ¶ 22, 985 N.E.2d 1000.

¶ 13	The constitution does not define the term "justiciable matter," and thus Illinois courts have defined the term on a case-by-case basis. *Ferguson*, 2013 IL 112488, ¶ 22, 985 N.E.2d 1000. The Illinois Supreme Court has held "justiciability encompasses a range of concepts, 'such as advisory opinions, feigned and collusive cases, standing, ripeness, mootness, political questions, and administrative questions.' " *Ferguson*, 2013 IL 112488, ¶ 23, 985 N.E.2d 1000 (quoting *Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d 474, 488, 901 N.E.2d 373, 383 (2008)); see also *Alternate Fuels, Inc. v. Director of the Illinois Environmental Protection Agency*, 215 Ill. 2d 219, 230, 830 N.E.2d 444, 450 (2004). The doctrine aims "to reserve the exercise of judicial authority for situations where an actual controversy exists." *Ferguson*, 2013 IL 112488, ¶ 23, 985 N.E.2d 1000. In this context, the word "actual"

> "does not mean that a wrong must have been committed and injury inflicted. Rather, it requires a showing that the underlying facts and issues of the case are not moot or premature, so as to require the court to pass judgment on mere abstract propositions of law, render an advisory opinion, or give legal advice as to future events. [Citations.] The case must, therefore, present a concrete dispute admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in the termination of the controversy or some part thereof. [Citations.]" (Internal quotation marks omitted.) *Ferguson*, 2013 IL 112488, ¶ 23, 985 N.E.2d 1000 (quoting *National Marine, Inc. v. Illinois Environmental Protection Agency*, 159 Ill. 2d 381, 390, 639 N.E.2d 571, 575 (1994)).

¶ 14	"The common fund doctrine is an exception to the general American rule that, absent a statutory provision or an agreement between the parties, each party to litigation bears its own attorney fees and may not recover those fees from an adversary." *Wendling v. Southern Illinois Hospital Services*, 242 Ill. 2d 261, 265, 950 N.E.2d 646, 648 (2011). Courts have applied the doctrine "in numerous types of civil litigation, including insurance subrogation claims." *Wendling*, 242 Ill. 2d at 265, 950 N.E.2d at 648.

> "The common fund doctrine allows an attorney 'who creates, preserves, or increases the value of a fund in which others have an ownership interest to be reimbursed from that fund for litigation expenses incurred, including counsel fees.' [Citation.] The court's power to do equity in a particular situation authorizes the award of fees under this doctrine, which is based on the policy to avoid the unjust enrichment of someone who obtains the benefit of a lawsuit without contributing to its costs." *Baez v. Rosenberg*, 409 Ill. App. 3d 525, 537, 949 N.E.2d 250, 262-63 (2011).

" 'To sustain a claim under the common fund doctrine, the attorney must show that (1) the fund was created as the result of legal services performed by the attorney, (2) the subrogee or claimant did not participate in the creation of the fund, and (3) the subrogee or claimant

benefited or will benefit from the fund that was created.' " *Linker v. Allstate Insurance Co.*, 342 Ill. App. 3d 764, 770, 794 N.E.2d 945, 950 (2003) (quoting *Bishop v. Burgard*, 198 Ill. 2d 495, 508, 764 N.E.2d 24, 33 (2002)).

¶ 15       At issue in this case is whether State Farm, as the subrogee and/or claimant, benefited or will benefit from the $50,000 settlement created by plaintiff's attorney. Plaintiff contends State Farm did receive a benefit because, when plaintiff's attorney secured the settlement with defendant, State Farm's "liability was reduced by being able to recover its subrogation interest asserted since January 27, 2014 for the Medical Payments benefits paid related to the January 18, 2014, injury." He further alleges State Farm will benefit from the $50,000 settlement in regard to plaintiff's underinsured-motorist claim because any award will be reduced by the amount of the settlement. On the other hand, State Farm asserts it received no benefit from the settlement because it waived its subrogation rights. It also argues that, if it recovers its medical payments to plaintiff in the underinsured-motorist proceedings, it will not benefit from the settlement because the recovery will not be from a fund created by plaintiff's attorney (see *Johnson v. State Farm Mutual Automobile Insurance Co.*, 323 Ill. App. 3d 376, 383, 752 N.E.2d 449, 455 (2001)). If State Farm's suggestion the outcome of the underinsured-motorist proceedings is irrelevant to the application of the common-fund doctrine is correct, then the common-fund doctrine issue was justiciable. Accordingly, we address the merits of State Farm's argument based on the *Johnson* case.

¶ 16       In *Johnson*, 323 Ill. App. 3d at 378, 752 N.E.2d at 451, the insurance company paid the medical payment coverage limit of $5000, and the insured subsequently made a claim under the uninsured-motorist provision of her policy. On her uninsured-motorist claim, the arbitrators awarded the insured $22,000, and the insurance company offset the $5000 it had already paid the insured for medical payments. *Johnson*, 323 Ill. App. 3d at 378, 752 N.E.2d at 451. Thereafter, the insured's attorney sought attorney fees from the insurance company under the common-fund doctrine. *Johnson*, 323 Ill. App. 3d at 378, 752 N.E.2d at 451. In rejecting the insured's claim under the common-fund doctrine, the Fifth District noted that, under the insurance policy's clear and unambiguous language, the insurance company was authorized to set off the $5000 it had paid under the medical payment coverage provision. *Johnson*, 323 Ill. App. 3d at 383, 752 N.E.2d at 455. Thus, it found the insured's attorney did not create any fund out of which the insurance company benefited. *Johnson*, 323 Ill. App. 3d at 383, 752 N.E.2d at 455.

¶ 17       Unlike in *Johnson*, plaintiff's attorney brought the underlying action against defendant, which resulted in a settlement. That settlement may end up being offset from plaintiff's underinsured-motorist claim. The uninsured-motorist award in *Johnson* was not offset by an amount obtained by the insured's attorney. Accordingly, we find *Johnson* distinguishable from this case.

¶ 18       We find our decision in *Stevens v. Country Mutual Insurance Co.*, 387 Ill. App. 3d 796, 903 N.E.2d 733 (2008), more akin to the case before us. There, the circuit court ordered the plaintiff's insurance company to (1) sign the settlement check, (2) pay its insured $29,579.40, which represented the balance of the underinsured-motorist coverage after offsetting the settlement and medical payments, and (3) pay $6806.88 to the insured, which represented one-third of the insurance company's subrogation lien for medical payments under the common-fund doctrine. *Stevens*, 387 Ill. App. 3d at 798-800, 903 N.E.2d at 735-36. In affirming the application of the common-fund doctrine to the medical payment recovery, this

court found one of the ways the insurance company benefited from the creation of the settlement fund was that the insurance company "was able to limit its liability by deducting the $50,000 common fund created by [the insured's attorney] from [the insured]'s subsequent underinsured-motorist claim." *Stevens*, 387 Ill. App. 3d at 801-02, 903 N.E.2d at 738. We also declined to address on the merits the insurance company's argument that the common-fund doctrine did not apply because the medical payments provided to the insured were reimbursed from its underinsured-motorist coverage under the insured's insurance policy. *Stevens*, 387 Ill. App. 3d at 802, 903 N.E.2d at 738. In making that finding, we noted the insured's attorney's claim for attorney fees under the common-fund doctrine did not depend upon the insurance policy's language. *Stevens*, 387 Ill. App. 3d at 802-03, 903 N.E.2d at 739. Additionally, this court stated that, since the insurance company benefited from the common fund created solely by the insured's attorney, the fact the insured's policy allowed the insurance company to recover medical payments made through its underinsured-motorist coverage did not negate its obligation to pay the insured's attorney for his services in creating the common fund. *Stevens*, 387 Ill. App. 3d at 803, 903 N.E.2d at 739.

¶ 19 State Farm asserts *Stevens* is distinguishable because, unlike it, the insurance company never waived its subrogation lien for medical payments in the tort action. See *Stevens*, 387 Ill. App. 3d at 801-02, 903 N.E.2d at 738. We disagree. While the insurance company in *Stevens* did not waive its right to recover its medical payments in the tort action, it, in fact, recovered its medical payments as part of the insured's underinsured-motorist award and not the insured's tort settlement. *Stevens*, 387 Ill. App. 3d at 799-800, 903 N.E.2d at 736. Moreover, the attorney's work in obtaining the tort settlement resulted in a benefit to the insurance company in the subsequent underinsured-motorist award. *Stevens*, 387 Ill. App. 3d at 801-02, 903 N.E.2d at 738. Accordingly, we find plaintiff's attorney has a *potential* common-fund doctrine claim for her work on the $50,000 settlement, which depends on the resolution of plaintiff's underinsured-motorist claim.

¶ 20 While we disagree with State Farm's assertion plaintiff's common-fund doctrine claim is completely foreclosed by its waiver of its subrogation rights to the tort settlement, we agree with State Farm's suggestion plaintiff's common-fund doctrine claim is premature at this time. *If*, in the underinsured-motorist award, State Farm is able to reduce its liability by the settlement and/or offset its medical payments, State Farm will benefit from the $50,000 settlement. However, at this point in time, any potential benefit is just a mere possibility. An actual controversy does not exist, and we do not make advisory opinions. This case is distinguishable from *Wajnberg v. Wunglueck*, 2011 IL App (2d) 110190, ¶¶ 8-9, 963 N.E.2d 1077, which involved an actual benefit to the insurance company, not a potential one, because the parties' settlement specifically included the payment of the insurance company's subrogation lien. Accordingly, we find plaintiff's common-fund doctrine claim did not present a justiciable matter, and thus the circuit court should have dismissed plaintiff's motion to adjudicate liens based on a lack of subject-matter jurisdiction. A judgment that lacks subject-matter jurisdiction is void (*Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 341, 770 N.E.2d 177, 188 (2002)) and must be vacated (see *Schak v. Blom*, 334 Ill. App. 3d 129, 134, 777 N.E.2d 635, 640 (2002) (noting courts have a duty to vacate void orders)).

¶ 21                              III. CONCLUSION

¶ 22        For the reasons stated, we vacate the Macon County circuit court's March 2016 judgment, denying plaintiff's motion to adjudicate liens, and affirm the judgment in all other respects.

¶ 23        Affirmed in part and vacated in part.